## SMITH *v.* BOSTON, CONCORD & MONTREAL RAILROAD, Prs., AND BOSTON & MAINE RAILROAD, Trs.

The Boston and Maine Railroad is a corporation in New-Hampshire, amenable to the process and subject to the jurisdiction of our courts, and answerable here for funds collected for the principal defendants in another State, without any express stipulation as to the place of their payment.

The existence of a contingent liability on the part of a trustee for the principal defendant, furnishes no valid ground for the discharge of the trustee.

Nor will the court, after disclosure completed, direct a suit to be continued to await the result of such contingent liability.

The liability of a trustee is determined by the state of facts existing at the time of his disclosure and set forth therein.

ASSUMPSIT, upon an account annexed to the writ to the amount of $679,008.06.   Also, upon various special and general counts. The writ was dated the 30th day or November, 1855, and was served upon the Boston and Maine Railroad as trustee, on the 4th day of December, 1855.

The Boston and Maine Railroad made disclosure as follows :

QUESTION to H. B. Wilbur, Treasurer of said Boston and Maine Railroad: Had said Boston and Maine Railroad, at the time of the service of the writ in this suit, or has it at any time since had in its possession any money, goods, chattels, rights or credits of said Boston, Concord and Montreal Railroad ?

ANSWER.   Said Boston and Maine Railroad had not in its hands or possession, at the time of the service of said writ, nor has it since had, any money, goods, rights or credits of said Boston, Concord and Montreal Road, according to my best knowledge and belief.

INT. 2. Has, or not, said Boston and Maine Railroad carried freight and passengers, and received pay therefor, a portion of which pay belongs to the Boston, Concord and Montreal Railroad ; and is not the Boston and Maine Railroad indebted to the Boston, Concord and Montreal Railroad on account of freight and passenger transportation ?—if so, to what extent?

ANS.   The Boston and Maine Railroad was indebted to the Boston, Concord and Montreal Railroad the sum of eleven thou-

sand, six hundred and seventy-two [dollars] and seventy cents, on account of collections made at Boston, on passengers and freight.

The Boston, Concord and Montreal Railroad are indebted to the Boston and Maine the sum of fifteen thousand dollars, for cash borrowed, for which they hold the notes of said Boston, Concord and Montreal Railroad.

INT. 3. When was said money loaned by the Boston and Maine Railroad to the Boston, Concord and Montreal Railroad ? how much was loaned ? what were the terms and conditions of said loan ?

ANS. About two years since the sum of $50,000 was loaned to the Boston, Concord and Montreal Railroad, payable, I think, in six months' time ; the Boston and Maine Railroad to extend the time of payment for the whole or part of the amount, or not, as it might suit their convenience. Payments have been made from time to time by said Boston, Concord and Montreal Railroad, and the balance now unpaid amounts to the sum of $15.000.

INT. 4. Has the Boston and Maine Railroad any security for said loan, any pledge of stock, bonds, or any other security—if so, what ?

ANS. They have endorsements as security, and nothing else.

INT. 5. Will you please annex a copy of the contract of the Boston and Maine Railroad with the Boston, Concord and Montreal Railroad, as to transportation ?

ANS. I am not able to furnish the copy here, but will furnish one to be annexed hereafter, if desired.

INT. 6. Will you please annex copies of the notes and endorsements on the same, held by the Boston and Maine Railroad against the Boston, Concord and Montreal Railroad ?

ANS. There are no endorsements of money on the notes. I am unable to furnish copies here, but will hereafter furnish them, to be annexed to this disclosure, if desired.

INT. 7. Where are those notes now ? what has been done with them ?

ANS. They have been discounted by one or more of the

Boston Banks, with the Boston and Maine Railroad endorsement thereon. The money was obtained on them, I think, in December last.

INT. 8. Have not said notes been legally transferred to said banks, and have they not the title and ownership of the same?

ANS. They have; but in case of non-payment at maturity the Boston and Maine Railroad will and must receive and pay for them.

INT. 9. Have the Boston and Maine Railroad any other liability upon them than as endorsers?

ANS. Not any.

INT. 10. When will said notes mature?

ANS. I think in two or three months, but have not the dates with me.

*By J. Quincy.* State what is the understanding and agreement, if any, between the Boston and Maine, and Boston, Concord and Montreal Railroad, as to the payment of said notes, if, when they mature, it is not convenient for said road to pay. [The question objected to, so far as it calls for any understanding.]

ANS. I know of no agreement in relation to them.

*By same.* Where does the passenger and freight of Boston, Concord and Montreal Railroad enter on the Boston and Maine, and over what part of the road does it pass?

ANS. They enter at Lawrence, in Massachusetts; pass over the Boston and Maine from that place to Boston, in Massachusetts.

H. B. WILBUR, *Treasurer Boston and Maine R. R.*

The copies spoken of in the disclosure may be referred to as part of this case, and also the acts of incorporation of the Boston and Maine Railroad.

*W. H. Bartlett,* (with whom was *G. W Stevens, Butters, Morrison, J. Bell* and *Marshall,*) for the plaintiff.

1. The Boston and Maine R. R. is a corporation established under the laws of this State, and by its charter subject to them

and within the jurisdiction of our courts. N. H. Laws 1841, ch. 6 ; 1 R. R. Charters 348 ; Mass. Laws 1841, ch. 56 ; 2 R. R. Charters 154–7 ; *Cooper* v. *Canal Co.*, 2 Murph. 195 ; 5 Dig. 248, 14 ; *Libbey* v. *Hodgdon*, 9 N. H. 394.

2. The liability of the trustee as endorser of the notes of the principal defendant is merely contingent, and cannot be set off. *Type Co.* v. *Mortimer*, 7 Pick. 488 ; Cush. Tr. Proc., secs. 126, 138, 142–4 ; Story on Prom. Notes 505.

The trustee is entitled to set off only such demands existing upon claims or contracts prior to the action, as he might at the date of the disclosure set off against the principal defendant. *Swamscot Co.* v. *Partridge*, 5 Foster 374–6 ; Cush. Tr. Proc., sec. 123, 126 ; *Hathaway* v. *Russell*, 16, Mass. 476 ; *Smith* v. *Stevens*, 9 Pick. 24 ; *Pennell* v. *Grab*, 14 Penn. 105 ; *Watkins* v. *Field*, 1 Eng. 391. And a liability for one cannot be used as a set-off, unless a cause of action has accrued upon it. *Sennet* v. *Johnson*, 9 Barr 338 ; 9 D. 396 ; 15 Barb. Set-Off 78, 84, 92 ; *Toppan* v. *Jenness*, 1 Foster 232 ; *Varney* v. *Brewster*, 14 N. H. 54 ; *Wolfe* v. *Washburn*, 6 Cowen 266 ; R. S., chap. 187, sec. 10 ; *Taylor* v. *Gardner*, 2 Wash. Cri. R. 498 ; *Weller* v. *Weller*, 18 Vt. 58.

The trustees having admitted their indebtedness to the principal defendant, are to be charged, unless they clearly discharge themselves. *Wright* v. *Ford*, 5 N. H. 179 ; *Giddings* v. *Colman*, 12 N. H. 156 ; *Spinney* v. *Hosiery Co.*, 5 Foster 14.

*H. A. Bellows*, (with whom were *Quincy* and *Fletcher*,) for the trustees.

The indebtedness of the trustee was for collections made at Boston on account of passengers and freight. The principal was connected with the Boston and Maine Railroad, and therefore only in Massachusetts.

The indebtedness, then, accrued in Massachusetts, where the trustee was located, and the debt, therefore, cannot be attached in this State, it being regarded in respect to this process as local. *Jones* v. *Winchester & Tr.*, 6 N. H. 497 ; *Sawyer* v. *Thompson*

*& Tr.*, 4 Foster 510 ; *Tingley* v. *Bateman & Tr.*, 10 Mass. 343 ; *Baxter & a.* v. *Vincent, Trustee of Marcy*, 6 Vt. 614. In this case the creditor lived in Vermont.

The Boston and Maine Railroad acted as the agent of the Boston, Concord and Montreal Railroad, and obtained the money as tolls or fare on freight and passengers.

The accounts were necessarily kept in Boston, and the debt was there payable.

The liability of the trustee as endorser existed at the time of the service of the writ. The process of foreign attachment is an equitable proceeding, and the law will not allow technical forms to interfere with the just disposition of the funds.

The trustee, therefore, should not be charged so long as that liability continues ; but, if need be, the suit should be continued until the matter be determined. *Boardman* v. *Cushing & Trs.*, 12 N. H. 105 ; *Hathaway* v. *Russell*, 16 Mass. 476 ; *Boston Type Foundry* v. *Martin & Tr.*, 7 Pick. 166 ; *Manufacturers' Bank* v. *Osgood & Tr.*, 3 Fairfield 117.

Fowler, J. It appears, from the disclosure of the trustees, that at the time of the service of the plaintiff's writ upon them they were indebted to the principal defendants in the sum of $11,672.70 on account of collections made by them at Boston, for the principal defendants, of the tolls arising from the transportation of freight and passengers by the principal defendants over their road in this State.

About two years since, the trustees loaned the principal defendants the sum of $50,000 upon three promissory notes for six months, with an understanding and agreement that they would extend the payment of the whole or part of these notes, or not, as might suit their convenience. Upon this loan payments were made from time to time, until, at the time of the disclosure, $15,000 only remained unpaid on notes which had not then matured. In December, 1855, the trustees endorsed and transferred the whole of said notes to various banks in Boston, which discounted the money thereon, so that at the time of the disclos-

ure said notes were all the property of said banks, and the only liability of the trustees thereon was as endorsers of the same to said banks.

No agreement or understanding existed between the principal defendants and the trustees, that the proceeds of the collections made by the latter for the former should be retained as security for the ultimate payment of the notes for $15,000.

The first objection to the liability of the trustees, relied upon in the argument, that the trustees are a foreign corporation and not within or subject to the jurisdiction of our courts, if valid, would undoubtedly prevail to discharge them. For it is well settled, by the authorities cited by the counsel for the trustees, that a person domiciled in a foreign jurisdiction cannot be holden here as trustee, unless he has property of the principal defendant in his possession in this State, or owes a debt or duty to such defendant, payable here. And a foreign corporation must occupy the same position.

But we do not understand the Boston and Maine Railroad to be a corporation foreign to New-Hampshire, and without the jurisdiction of her courts. By an act passed on the 27th day of June, 1835, certain persons were created by the legislature of New-Hampshire a corporation forever in this State, by the name of the Boston and Maine Railroad, with authority to construct and operate a railroad from the line of Massachusetts at Haverhill, to the line of Maine. By a subsequent act, passed in 1841, this corporation was authorized to unite with others in this State, Maine and Massachusetts, retaining for the united corporation the same name, upon the express condition and provision that the new corporation should be amenable to process here, and that there should always be an officer thereof in this State, upon whom service might legally and properly be made.

The trustees, then, are not a foreign corporation, but have a legal and actual existence in this State, are within the jurisdiction of our courts, and amenable to their process.

Such being the character and situation of the trustees, the fact that the collections were made at Boston cannot affect

their liability in any respect; it not appearing that by the terms of the contract between the parties there was any express stipulation as to the place of payment of the proceeds of the collections made by the trustees for the principal defendants. They were made at Boston as a matter of convenience and accommodation, as well to the corporations themselves as to the passengers and the owners of freight transported over the road of the principal defendants in this State. The defendants exist only in this State, the trustees also exist here, and there can be no doubt that the payment of the proceeds of those collections might properly be enforced here as between the parties, in the absence of any express stipulation for their payment elsewhere. When the collections were made by the trustees, their indebtedness therefor attached to them wherever they had a legal existence. Having such existence in this State, and being amenable to the process and subject to the jurisdiction of our courts, they might have been compelled to pay them over to the principal defendants by the process of those courts, and they cannot be exonerated from liability as trustees, because they happen to have a legal existence in Massachusetts also, and made the collections there.

Do the existence of the notes for $15,000, and the liability of the trustees as endorsers thereof to the Boston banks, in the event of their non-payment at maturity by the principal defendants, furnish any sufficient reason why the trustees should not be charged for the funds in their hands? At the date of the disclosure the proceeds of collections made are to be regarded as fully due and owing from the trustees to the principal defendants, because the disclosure so states. Would, then, the existence of the notes for $15,000, still not matured, and the trustees' endorsement thereof, constitute any defence to a suit brought by the principal defendants against the trustees, to recover those proceeds, or furnish grounds for even an equitable set-off in such suit?

We are clearly of opinion they would not. In order to be the subject of set-off, demands must not only be mutual, but due

and payable. But that is not the case here. The trustees owe the principal defendants a present debt, while they have no present claim against the defendants. They are only under a contingent liability for them, which may never result in a claim that can be enforced at law.

The reception of notes payable on time, if not in law an absolute payment of a preëxisting debt in this State, under the circumstances disclosed, was at least such an extension of the time of payment of that debt, that if they had been still retained in the trustees' hands, they could not have been filed in off-set to a claim of the principal defendants to recover the proceeds of collections made for them, nor could the existence of the debt for which they were given have been shown in evidence, to bar the defendants' right to recover in a suit for such proceeds.

Perhaps the reception of negotiable promissory notes should be regarded a *prima facie* evidence of the payment of a precedent debt, and after the payee has negotiated such notes to third persons he should be estopped from denying that they were so received. Many of the authorities go to sustain such a position. Bacon's Abr., Debt, G, note; *Richardson* v. *Rickman*, B. R. M. 16, G, 3, cited in *Hearslake* v. *Morgan*, 5 T. R. 517; *Holmes & Drake* v. *D'Camp*, 1 Johns. 36, 37; *Burdick* v. *Green*, 15 Johns. 249, 250.

But, whether the notes for $15,000 are to be regarded as received in payment of the original debt or not, having been negotiated so that the defendants had become liable to third parties for their whole amount, the original debt between the parties, if not extinguished was at least thereby suspended until the maturity of the notes. By the sale and transfer of the notes to the Boston banks the defendants became debtors to those institutions, while the trustees voluntarily assumed the liability of endorsers, for the sake of realizing at once in cash the avails thereof. While the notes were thus the property of those institutions, all present liability of the defendants to the trustees, whether upon the original indebtedness or upon the notes themselves, was in abeyance, and could only be revived and enforced

after the notes arrived at maturity.  Story on Prom. Notes 110, 111, sec. 104; Bayley on Bills, chap. 9, 363, 369; Revised Statutes, chap. 187, sec. 6 ; *Drew* v. *Towle,* 7 Foster 427.

The liability of the trustees for the principal defendants was, therefore, altogether contingent and uncertain, and such liability is not the subject even for an equitable set-off by the trustees. *Hathaway* v. *Russell,* 16 Mass. 476 ; *Type Company* v. *Mortimer & Tr.,* 7 Pick. 488 ; Cushing's Trustee Process, secs. 123, 126, 138, 142, 144, and authorities.  *Swamscot Co.* v. *Partridge,* 5 Foster 374, 376.

It is suggested that, this contingent liability being disclosed, the court should direct the action to be continued until after the maturity of the notes, so that, if they shall not be paid by the defendants, the trustees may avail themselves of the funds in their possession wherewith to meet them.  We are not aware of any practice or any principle which would justify this course. The liability of a trustee is determined by the state of facts existing at the time his disclosure is made and therein set forth.  If delay is desirable, application should be made for a postponement of the disclosure.  When that is made and finished, judgment follows according to its requirements.

We are accordingly of opinion that the trustees are chargeable for the funds in their hands, less their own costs in this proceeding.

*Trustees chargeable.*