Merrimack
No. 79-368

A. E. NELSON & COMPANY & a.

v.

HAGGETT'S SPORT SHOP, INC.
AND
INDIAN HEAD NATIONAL BANK OF CONCORD, TRUSTEE

August 21, 1980

*Rinden P.A.*, of Concord (*Paul A. Rinden* orally), for the plaintiffs.

*Hall, Morse, Gallagher & Anderson*, of Concord (*William S. Hall* orally), for Indian Head National Bank of Concord.

BOIS, J.   The plaintiffs seek to attach monies received by Indian Head National Bank as proceeds of a foreclosure sale on merchandise owned by Haggett's Sport Shop, Inc. (Haggett's). They claim that the bank had not perfected its security interest in after-acquired inventory. We uphold the court's granting of the bank's motions for discharge as trustee and for summary judgment.

Haggett's entered into a loan agreement with the Indian Head National Bank of Concord (the bank) in July 1974 and borrowed money thereunder. The parties entered into a security agreement, and a U.C.C. financing statement was filed with the New Hampshire Secretary of State's Office and the City of Concord in September 1974. Haggett's received two additional loans from the bank in July 1977, which were also executed with security agreements, but for which no financing statements were filed.

In November 1977, the bank sent demand notices to Haggett's for payment of delinquent and outstanding balances on its loans. Thereafter, the bank took possession of certain assets of Haggett's, including inventory, receivables, fixtures and equipment, and sold them for $150,135.33. The proceeds of the sale were applied to the costs of the sale and foreclosure and to payment of delinquent and outstanding indebtedness; the balance of $7,526 was paid to Haggett's. At the time of the sale, there were no U.C.C. filings on record which were not previously discharged except for the financing statement filed in connection with the 1974 security agreement with the bank.

In April 1978, the plaintiffs served the bank with a writ of

trustee process, alleging that the foreclosure proceeds which the bank credited to itself were from after-acquired inventory not included in the financing statement on file with the Secretary of State's Office, and were therefore reachable by the plaintiffs as creditors of Haggett's. The bank, as trustee, filed motions for summary judgment and for discharge as trustee. The Trial Court (*Souter*, J.) granted the bank's motions and reserved and transferred the plaintiffs' exceptions.

The first issue is whether the trial court properly granted the bank's motion for summary judgment. By granting the motion, the court found that there were no genuine issues of material fact in dispute and that the plaintiffs were not entitled to recover as a matter of law. RSA 491:8-a (Supp. 1979); *see New Hampshire York Co. v. Titus Constr. Co.*, 107 N.H. 223, 224-25, 219 A.2d 708, 710 (1966). Because a review of the record before us does not reveal any genuine issue of disputed material fact, the legal issue becomes whether the financing statement and security agreements were sufficient to attach and perfect a security interest in Haggett's after-acquired inventory.

In the 1974 security agreement, Haggett's gave to the bank a security interest in "all inventory of the Borrower, as defined in Paragraph 3.1 hereof, and in all the proceeds and products thereof." Paragraph 3.1 provides as follows:

> "The term 'inventory' means goods, merchandise and other personal property *now owned or hereafter acquired* by the Borrower, which are held for sale or lease or are furnished or to be furnished under a contract or contracts of service, or are raw materials, work in process or materials used or consumed or to be used or consumed in Borrower's business; and without limiting the foregoing definition, the term inventory includes all of the Borrower's inventory of bicycles, guns, fishing supplies, etc. in connection with a retail sporting goods store." (Emphasis added.)

The security agreement, paragraph 4, also contained a statement that the "[b]ank may from time to time make loans or advances to the Borrower, all of which loans or advances are secured by this Security Agreement." The U.C.C. financing statement covered "All Accounts Receivables and/or *Inventory in connection with a retail sporting goods store*" (emphasis added).

A security agreement is effective according to its terms between the parties and against creditors. RSA 382-A:9-201 (Supp.

1979). The security agreement at issue specifically referred to after-acquired inventory. Although the words "after-acquired inventory" were not used in the financing statement, the use of the words "all inventory" was sufficient under the circumstances to give the plaintiffs and all other creditors notice that the bank had perfected a security interest in both the inventory possessed by the debtor at the time the security agreement was executed and inventory acquired thereafter, until the debt was paid. *See* RSA 382-A:9-110 (Supp. 1979), RSA 382-A:9-402, comment 2; *Borg-Warner Acc. Corp. v. Wolfe City Nat. Bank*, 544 S.W.2d 947, 951 (Ct. Civ. App. Tex. 1976); *National Cash Register Co. v. Firestone & Co. Inc.*, 346 Mass. 255, 260-61, 191 N.E.2d 471, 474 (1963). *See generally* 69 AM. JUR. 2d *Secured Transactions* § 298 (1973). Furthermore, the clause in the security agreement that the bank may make additional loans to the borrower which would also be secured by that agreement was sufficient to put the creditors on notice of the two additional "Note and Security Agreement[s]" between the bank and Haggett's for which no financing statements were filed. *See* RSA 382-A:9-204(3) (Supp.1979); 69 AM. JUR. 2d *Secured Transactions* § 315 (1973).

■ The financing statement and the first security agreement were sufficient as a matter of law to enable the bank to attach, perfect a security interest in, and sell Haggett's after-acquired inventory in payment of delinquent balances on its loans. RSA 382-A:9-303 (Supp. 1979); RSA 382-A:9-306(1) (Supp. 1979). The trial court therefore properly granted the bank's motion for summary judgment.

■ The second issue is whether the trial court's granting of the plaintiff's motion for a jury trial under RSA 512:18 precludes the court from considering a motion for summary judgment timely filed by the defendant pursuant to RSA 491:8-a (Supp. 1979). RSA 512:18 allows either party to move for a trial by jury when "by the depositions taken . . . it appears that the trustee denies his liability as claimed by the plaintiff." RSA 491:8-a (Supp. 1979) allows either party to move for summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

In the case before us, it is clear that the trustee bank denied its liability as claimed by the plaintiffs and that the court's granting of the plaintiffs' motion for a jury trial was therefore proper. It is also clear, however, that there was no genuine issue of material fact, that the defendant was entitled to judgment as a matter of

law, and that the court's granting of defendant's motion for summary judgment was also proper. The question of trustee liability, as in the case before us, may be solely a legal issue; the mere denial of liability by a trustee does not legally or logically dictate that there are triable issues of fact sufficient to withstand a motion for summary judgment. *See generally* 73 AM. JUR. 2d *Summary Judgment* § 26 (1974). Moreover, a contrary conclusion would unnecessarily restrict discretionary authority of the trial court and defeat the purpose of the summary judgment statute. *See New Hampshire York Co. v. Titus Constr. Co.*, 107 N.H. 223, 224-25, 219 A.2d 708, 710 (1966). The granting of a motion for a jury trial under RSA 512:18, therefore, does not preclude the court from considering a motion for summary judgment subsequently filed pursuant to RSA 491:8-a (Supp. 1979).

The final issue is whether the court erred in granting the bank's motion for discharge as trustee. The plaintiffs argue that 12 U.S.C. § 91, which was the basis for the defendant's motion and the court's decision, was erroneously applied.

12 U.S.C. § 91 provides in pertinent part that:

> "no attachment, injunction, or execution, shall be issued against [a national banking association] or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court."

The plaintiffs argue that they sought to garnish those monies held by the bank as trustee for Haggett's and that 12 U.S.C. § 91 is not applicable to such garnishment.

The monies that the plaintiffs sought to attach were the proceeds of the foreclosure sale on inventory which the bank had applied in payment of delinquent and outstanding balances of its loans to Haggett's. We have already held that the bank had perfected its security interest in the inventory which it sold and properly applied the proceeds thereof in discharge of loans it had made to Haggett's. The bank had a legal right, under RSA 382-A:9-201 (Supp. 1979) and under the terms of the security agreement, to apply such sums to the indebtedness due.

██ ██ The plaintiffs correctly assert that 12 U.S.C. § 91 does not apply to garnishment proceedings. *Earle v. Pennsylvania*, 178 U.S. 449, 456 (1900); *see Third National Bank v. Impac Limited, Inc.*, 432 U.S. 312, 318 (1977). In the case before us, however, the plaintiffs, through trustee process, sought to attach property of the bank and not to garnish property of Haggett's held by the bank. The liability of the trustee is determined by the monies belonging

to the principal debtor held by the trustee at the time of the service of the plaintiffs' writ upon the trustee subject to such legal and equitable set-off as the trustee may be entitled to have against the debtor. *Wheeler v. Emerson*, 45 N.H. 526, 527-28 (1864); *see Smith v. B. C. & M. Railroad, & Trs.*, 33 N.H. 337, 345 (1856). At the time of trustee attachment, Haggett's was no longer the owner of the proceeds of the foreclosure sale because the bank had already applied them against the loans. Moreover, the uncontroverted record shows that the bank did not possess or hold any funds belonging to Haggett's. The petition at issue was accordingly an attempt to reach the bank's property and was clearly prohibited as an attachment under 12 U.S.C. § 91. The trial court's granting of the bank's motion for discharge as trustee was therefore proper.

*Affirmed.*

All concurred.