NATIONAL CASH REGISTER COMPANY *vs.* FIRESTONE & Co., INC.

Suffolk. May 7, 1963. — June 21, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Uniform Commercial Code,* Security interest, Security agreement, Financing statement.

Under the Uniform Commercial Code, G. L. c. 106, §§ 9–110, 9–203 (1) (b), 9–204 (3), a security agreement between the proprietor of a luncheonette and a lender of money, providing that it covered "All contents of luncheonette including equipment such as . . . [certain specified articles not including a cash register] together with all property and articles now, and which may hereafter be, used or mixed with, added or attached to . . . any of the foregoing described property," was broad enough to cover a cash register subsequently acquired by the proprietor. [259]

A financing statement correctly stating the name and address of an individual debtor doing business under a trade name was, under the Uniform Commercial Code, G. L. c. 106, § 9–402 (5), not insufficient merely because the first letter of the first word of the trade name was misspelled with a C instead of a K. [259–260]

National Cash Register Co. *v.* Firestone & Co. Inc.

A financing statement duly filed by a lender of money to the proprietor of a luncheonette contained, within the Uniform Commercial Code, G. L. c. 106, § 9–402 (1), "a statement indicating the types, or describing the items, of collateral" sufficient to cover a cash register subsequently acquired by the proprietor where the financing statement in terms referred to "All contents of luncheonette including equipment such as . . . [certain specified articles]," although a cash register was not specifically mentioned and there was no reference to articles thereafter to be acquired by the proprietor. [260–262]

The security interest of a conditional vendor of a cash register, not perfected until after the expiration of the ten days mentioned in the Uniform Commercial Code, G. L. c. 106, § 9–312 (4), as amended by St. 1959, c. 580, § 10, was subordinate to an earlier security interest of a lender of money to the vendee attaching to the cash register as after-acquired property of the vendee, so that upon default by the debtor under his obligations to both the lender and the vendor, the lender, as against the vendor, did not convert the cash register by taking possession of and selling it. [256–258, 262]

Tort. Writ in the Municipal Court of the City of Boston dated March 23, 1961.

The action was heard by *Adlow, C.J.*

*Louis Karp* for the defendant.

*Alan L. Lefkowitz* for the plaintiff.

*Robert Braucher, Walter D. Malcolm & Edward L. Schwartz,* Massachusetts Commissioners on Uniform State Laws, as amici curiae, submitted a brief.

Wilkins, C.J. In this action of tort for conversion of a cash register there was a finding for the plaintiff. The Appellate Division dismissed a report, and the defendant appealed.

The case was heard on a case stated. The underlying question is the relative standing of two security interests.[1] On June 15, 1960, the plaintiff, a manufacturer of cash registers, and one Edmund Carroll, doing business in Canton as Kozy Kitchen, entered into a conditional sale contract for a cash register. On November 18, 1960, the de-

---

[1] Uniform Commercial Code, G. L. c. 106, § 9–105 (1) (h), inserted by St. 1957, c. 765, § 1, reads: " 'Security agreement' means an agreement which creates or provides for a security interest."

*Id.* c. 106, § 1–201 (37), reads in part: " 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (section 2–401) is limited in effect to a reservation of a 'security interest.' "

fendant, which was in the financing business, made a loan to Carroll, who conveyed certain personal property to the defendant as collateral under a security agreement. The defendant filed a financing statement with the Town Clerk of Canton on November 18, 1960, and with the Secretary of State on November 22, 1960. Between November 19 and November 25 the plaintiff delivered a cash register to Carroll in Canton. On November 25, the contract of June 15 was canceled and superseded by a new contract for the same cash register but providing for different terms of payment. The plaintiff filed a financing statement with respect to this contract with the Town Clerk of Canton on December 20 and with the Secretary of State on December 21. Carroll subsequently became in default both on the contract with the plaintiff and on the security agreement with the defendant. In December the defendant took possession of the cash register, and although notified on January 17, 1961, of the plaintiff's asserted right sold it at auction on the following day.

The defendant's security agreement recites that Carroll in consideration of $1,911 paid by it does "hereby grant, sell, assign, transfer and deliver to Grantee the following goods, chattels, and automobiles, namely: The business located at and numbered 574 Washington Street, Canton Mass. together with all its good-will, fixtures, equipment and merchandise. The fixtures specifically consist of the following: *All contents of luncheonette including equipment such as: booths and tables; stand and counter; tables; chairs; booths; steam tables; salad unit; potato peeler; U.S. Slicer; range; case; fryer; compressor; bobtail; milk dispenser; silex; 100 Class air conditioner; signs; pastry case; mixer; dishes; silverware; tables; hot fudge; Haven Ex.; 2 door stationwagon 1957 Ford #A57R107215* together with all property and articles now, and which may hereafter be, used or mixed with, added or attached to, and/or substituted for, any of the foregoing described property."

In the defendant's financing statement the detailed description of the "types (or items) of property" is the same

as the words in supplied italics in the security agreement. There is no specific reference to a cash register in either document, and no mention in the defendant's financing statement of property to be acquired thereafter.

Under the Uniform Commercial Code, enacted by St. 1957, c. 765, § 1, after-acquired property, such as this cash register, might become subject to the defendant's security agreement when delivered, G. L. c. 106, § 9–204 (3);[1] and likewise its delivery under a conditional sale agreement with retention of title in the plaintiff would not, in and of itself, affect the rights of the defendant. G. L. c. 106, § 9–202.[2] Although the plaintiff could have completely protected itself by perfecting its interest before or within ten days of the delivery of the cash register to Carroll,[3] it did not try to do so until more than ten days after delivery. Thus the principal issue is whether the defendant's earlier security interest effectively covers the cash register.

The trial judge gave no reasons for his ruling. The Appellate Division rested its decision upon the mere statement of the omission of the defendant's financing statement to refer to after-acquired property or to the cash register specifically. The Massachusetts Commissioners on Uniform State Laws in their brief as amici curiae argue that there need be no reference to after-acquired property in the financing statement. Before we reach that question, however, we must consider several matters raised by the plaintiff.

First, the plaintiff argues that the debtor could not have intended to grant a security interest to the defendant be-

---

[1] With exceptions presently immaterial, "a security agreement may provide that collateral whenever acquired shall secure all obligations covered by the security agreement."

[2] "Title to Collateral Immaterial. Each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor."

[3] G. L. c. 106, § 9–312 (4) (as amended through St. 1959, c. 580, § 10): "A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter."

cause the purchase was five months earlier, delivery was about to be made, and the cash register could be repossessed by the plaintiff for default within the period of twenty-one months provided for instalment payments. It is also urged that, without the cash register, the defendant was well secured for its loan, a fact which cannot be inferred and which, in any event, would not be conclusive. The debtor's intent must be judged by the language of the security agreement.

In G. L. c. 106, § 9–110, it is provided: "For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." In § 9–203 it is provided: (1) ". . . a security interest is not enforceable against the debtor or third parties unless . . . (b) the debtor has signed a security agreement which contains a description of the collateral . . . ."

Contrary to the plaintiff's contention, we are of opinion that the security agreement is broad enough to include the cash register, which concededly did not have to be specifically described. The agreement covers "All contents of luncheonette including equipment such as," which we think covers all those contents and does not mean "equipment, to wit." There is a reference to "all property and articles now, and which may hereafter be, used . . . with, [or] added . . . to . . . any of the foregoing described property." We infer that the cash register was used with some of the other equipment even though the case stated does not expressly state that the luncheonette was operated.

The plaintiff's next argument is that the financing statement is insufficient because it incorrectly describes the debtor as "Carroll, Edmund d/b/a Cozy Kitchen 574 Wash. St. Canton, Mass." The specific objection is that "Cozy" should be "Kozy." This word, however, is merely part of the name and style under which the debtor, an individual, did business. The Uniform Commercial Code, § 9–402 (5), reads: "A financing statement substantially complying with the requirements of this section is effective even

though it contains minor errors which are not seriously misleading.'' The name of the debtor, Carroll, is correctly given. It should have been and, for aught that appears, was correctly indexed under ''C.'' With the name of the debtor accurately stated, the spelling of ''Cozy'' is, at most, a minor error which is not ''seriously misleading.''

We now come to the question whether the defendant's financing statement should have mentioned property to be acquired thereafter before a security interest in the cash register could attach. The Code, G. L. c. 106, § 9–402 (1), reads in part: ''A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.''

In the official comment to this section appears the following: ''2. This Section adopts the system of 'notice filing' which has proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 9–208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make disclosure.[1]  Notice filing has proved to be of great use in financing transactions involving inventory, accounts and chattel paper, since it obviates the necessity of refiling on each of a series of transactions in a continuing arrangement where the collateral changes from day to day. Where

---

[1] The plaintiff contends that § 9–208 is of no help if the debtor or named creditor is slow in giving, or refuses to give, the necessary information. See Coogan, Public Notice under the Uniform Commercial Code and other Recent Chattel Security Laws, including ''Notice Filing,'' 47 Iowa L. Rev. 289, 318n. If so, the remedy lies with the Legislature.

other types of collateral are involved, the alternative procedure of filing a signed copy of the security agreement may prove to be the simplest solution." See Am. Law Inst. Uniform Commercial Code, 1962 Official Text with comments, pp. 703–704.

The framers of the Uniform Commercial Code, by adopting the notice filing system, had the purpose to recommend a method of protecting security interests which at the same time would give subsequent potential creditors and other interested persons information and procedures adequate to enable the ascertainment of the facts they needed to know. In this respect the completed Code reflects a decision of policy reached after several years' study and discussion by experts. We conceive our duty to be the making of an interpretation which will carry out the intention of the framers of uniform legislation which already has been enacted in twenty-five States. That the result of their policy decision may be asserted to favor certain types of creditors as against others or that a different policy could have been decided upon is quite beside the point.

The case at bar is, for all practical purposes, one of first impression under the Code. There seem to be no decisions anywhere which specifically deal with the situation presented to us.[1]

In view of the broad purposes of the act we do not give a restrictive construction to the provision which sets forth what constitutes a "sufficient" financing statement. The defendant's financing statement is signed by the debtor and

[1] See, for example, *In the Matter of A A Appliance & TV Center, Inc.* 170 F. Supp. 103 (E. D. Wis.); *In the Matter of Drane,* 202 F. Supp. 221 (W. D. Ky.); *Howarth* v. *Universal C. I. T. Credit Corp.* 203 F. Supp. 279 (W. D. Pa.). See also in Pa. Court of Common Pleas, *Girard Trust Corn Exch. Bank* v. *Warren Lepley Ford, Inc.* 13 D. & C. (Pa.) 2d 119; *National-Dime Bank* v. *Cleveland Bros. Equip. Co. Inc.* 20 D. & C. (Pa.) 2d 511; *Thomson* v. *O. M. Scott Credit Corp.* 28 D. & C. (Pa.) 2d 85. Cf. *E. M. Blunt, Inc.* v. *Giles,* 288 Mass. 515. Among law review articles, see Coogan, Article 9 of the Uniform Commercial Code: Priorities among Secured Creditors and the "Floating Lien," 72 Harv. L. Rev. 838; Coogan, Public Notice under the Uniform Commercial Code and other Recent Chattel Security Laws, including "Notice Filing," 47 Iowa L. Rev. 289, 317 et seq.; Coogan, The Lazy Lawyer's Guide to Secured Transactions under the Code, 60 Mich. L. Rev. 685; Coogan & Bok, The Impact of Article 9 of the Uniform Commercial Code on the Corporate Indenture, 69 Yale L. J. 203, 213–218.

the secured party and gives both the address of the latter from which information is to be obtained and the mailing address of the debtor. It is argued, however, that the "statement indicating the types, or describing the items, of collateral" is inadequate because it fails to include a reference to the after-acquired clause of its security agreement, and so is not a reasonable identification of the cash register. Based upon the last two sentences of comment 2 above quoted, the plaintiff emphasizes that the cash register is "equipment," c. 106, § 9–109 (2), and not "inventory," § 9–109 (4), or an "account," § 9–106, or "chattel paper," § 9–105 (1) (b). We cannot agree that the distinction, unexpressed in the Code, is presently controlling. We observe nothing to exclude the cash register, or any "equipment" for that matter, from the system of notice filing, the adoption of which the comment discloses to be the intent of the section for all purposes and not just for some. That "the alternative procedure of filing" a copy of the security agreement may be the simple solution for some types of collateral does not bar notice filing. Filing a copy of the security agreement is not exclusive but is an alternative procedure.

The words, "All contents of luncheonette," including, as we have held, all equipment, were enough to put the plaintiff on notice to ascertain what those contents were. This is not a harsh result as to the plaintiff, to which, as we have indicated, § 9–312 (4) made available a simple and sure procedure for completely protecting its purchase money security interest.

The order of the Appellate Division is reversed. The finding for the plaintiff is vacated. Judgment is to be entered for the defendant.

*So ordered.*