In the Matter of **EXCEL STORES, INC.**
and
**Excel Enterprises, Inc., Bankrupts,**
**National Cash Register Company,**
**Petitioner-Appellant.**

**Nos. 179, 180, Dockets 28432, 28433.**

United States Court of Appeals
Second Circuit.

Argued Nov. 18, 1964.

Decided Feb. 11, 1965.

Ralph R. Rakosky, New London, Conn. (Michael E. Cronin, Jr. and Michael A. Rakosky, New London, Conn., on the brief), for trustee-appellee.

Charles Suisman, New London, Conn. (S. Joel Suisman and Suisman, Shapiro & Wool, New London, Conn., on the brief), for petitioner-appellant.

Before LUMBARD, Chief Judge, and MEDINA and MARSHALL, Circuit Judges.

MEDINA, Circuit Judge:

It was held below that the conditional sale contract between appellant National Cash Register Company and the bankrupt Excel Stores, Inc. was not a sufficient compliance with the requirements of the Uniform Commercial Code embodied in Section 42a–9–402 of the Connecticut General Statutes because not properly "signed." The defect is that the name "Excel Department Stores" was used instead of "Excel Stores, Inc." The critical question is whether this mistake was in the category of "minor errors which are not seriously misleading," Section 42a–9–402, subsection (5). We are of the opinion that this was a minor error, and not seriously misleading, and we reverse with a direction that appellant's reclamation petition be granted or such other relief be fashioned as is consistent with the present circumstances of the case and with this opinion.

In the village of Pawcatuck, in the town of Stonington, Connecticut, near the Rhode Island border, lies a Shopping Center where in 1961 there was a sort of department store. Under the same management and as part of a single venture Excel Stores, Inc., a Connecticut corporation, sold "toys, domestics and other miscellaneous" articles of merchandise, and Excel Enterprises, Inc., a Massachusetts corporation, conducted "discount sales of women's and children's wear." We were told on oral argument that the name "Excel" was prominently displayed outside the store.

In July of 1961 a National Cash Register Company salesman negotiated with Andrew F. Machado, the Treasurer of the duly organized corporation Excel Stores, Inc., a sale of six cash registers to Excel Stores, Inc. The contract of conditional sale then entered into was superseded on October 26, 1961 by another agreement providing for different terms of payment. It is with this second contract that we are concerned in this case.

The applicable provision of the Uniform Commercial Code, adopted by Connecticut and some 30 or more States, see Gilmore, Book Review, 73 Yale L.J. 1303, 1306 (1964), and in force in Connecticut on October 26, 1961, is as follows:

"(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a general description of the real estate concerned and the name of the record owner thereof. A copy of the security agreement is sufficient as a financing statement if it contains

the above information and is signed by both parties."

No question is raised with respect to the filing of the contract of October 26, 1961, or compliance with the "formal requisites" thus set forth, except that the document is said not to be properly "signed."

The facts are simple and are not in dispute. Andrew F. Machado was in fact the Treasurer of Excel Stores, Inc., he intended to make and did make the purchase of the six cash registers on behalf of and as representing Excel Stores, Inc. and all the checks delivered from time to time in partial payment of the indebtedness to National Cash Register Company were checks of Excel Stores, Inc. But Machado inadvertently made the mistake of writing "Excel Department Stores" instead of "Excel Stores, Inc." when he filled out the security agreement, adding, after the printed word "by," his signature, "Andrew F. Machado." These names were subsequently typed by appellant in an appropriate place indicated in the agreement.

It is clear that the parties intended to execute a valid and binding contract. Cf. U.C.C., Section 1-201(39). Nor can it be doubted that any creditor of Excel or other interested person searching the record would come to the Excel Department Store at the Shopping Center of Pawcatuck, find Machado's name and be put on notice that a lien against Excel might be outstanding and that communication with Machado might be appropriate. This is precisely all that the Code requires. See Official Comment to U.C.C. Section 9-402.

It is easy to understand why in the earlier period before the adoption of the Uniform Commercial Code there were so many decisions of courts holding seemingly trifling discrepancies and omissions to be defects fatal to the security interests of conditional vendors. The basic reason for these holdings was the fact that the vendee had open possession of the personal property involved and there was nothing attached to or marked upon the articles to give a prospective creditor or other interested person notice that the person in possession held subject to a security interest in someone else. Cf. Benedict v. Ratner, 1925, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. It was perhaps thought that, under these circumstances, it was perfectly fair to require rigid adherence to statutory requirements and not permit even the slightest deviation. A notorious example, specifically disapproved by the Code, is General Motors Acceptance Corp. v. Haley, 1952, 329 Mass. 559, 109 N.E.2d 143. For exhaustive, and amusing, lists of similar cases, see Coogan, Public Notice Under the Uniform Commercial Code, 47 Iowa L.Rev. 289, nn. 5, 82, 86 (1962); Note, 50 Cornell L.Q. 128, 130, n. 29 (1964).

In the light of modern conditions, however, the joint efforts of the American Law Institute and the National Conference of Commissioners on Uniform State Laws disclosed substantial disagreement with what was described in the Official Comment to Section 9-402(5) as "fanatical and impossibly refined reading of * * * statutory requirements in which courts have occasionally indulged themselves." Cf. Coogan, supra, at 319-320. The result was the scrapping of the old statutory scheme, which varied from State to State, and the substitution for it of the filing of a simple notice the purpose of which is only to "give the minimum information necessary to put any searcher on inquiry." The Official Comment concluded: "Technical requirements are eliminated, pitfalls are avoided."

To effectuate this purpose, and in the spirit of liberality and substantial justice so often expressed by Professor Karl N. Llewellyn, the Chief Reporter of the Code, there was included in the very Section of the Code that enumerates the formal requisites of the notice, which we have already quoted in full, the following Subdivision (5) that we think is dispositive of this case:

"A financing statement substantially complying with the require-

ments of this section is effective even though it contains minor errors which are not seriously misleading."

We hold the error made by Machado to be a "minor error" which is not "seriously misleading."

Reversed with direction to grant the petition for reclamation or to give such other equivalent relief as the present circumstances of the case may require, consistent with this opinion.