W. Lindsay STAFFORD, Jr., as Trustee in Bankruptcy of Pete Knight Television & Appliance, Inc., Bankrupt, Plaintiff,

v.

ADMIRAL CREDIT CORPORATION, Defendant.

W. Lindsay STAFFORD, Jr., as Trustee in Bankruptcy of Pete Knight Television & Appliance, Inc., Bankrupt, Plaintiff,

v.

REDISCO, INC., Defendant.

Nos. C–207–WS–66, C–208–WS–66.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Feb. 28, 1968.

W. P. Sandridge, Jr., Winston-Salem, N. C., for plaintiff.

James B. Rivenbark, Greensboro, N. C., for defendant.

## MEMORANDUM OPINION

GORDON, District Judge.

This case is a consolidation of two closely related bankruptcy cases involving the right to certain appliances for which trust receipts had been executed and filed. The appliances involved were repossessed prior to bankruptcy by the respective entrusters of the trust receipts, the defendants herein. The trustee in bankruptcy seeks to set aside each of these repossessions as a voidable preference or "a transfer of property for an antecedent debt" within the meaning of the Bankruptcy Act, 11 U.S.C. § 96. The defendants contend that the trust receipts were properly recorded before the pre-bankruptcy four month cutoff date prescribed in the Act, and that therefore the repossessions were lawful and binding. The issue narrows down to the basic question whether the respective trust receipt financing statements were properly recorded prior to this termination date.

The parties agreed to separate the issues in order to have the Court decide the questions of law prior to trial. For this purpose, the parties stipulated to certain facts. Without making formal findings of fact, the Court notes the following facts stipulated by the parties:

1. The bankrupt was engaged in the retail appliance business continuously during the period involved in this suit, from early 1962 until the bankrupt filed his petition in bankruptcy on June 13, 1966.

2. During this same period, the respective defendants, Admiral and Redisco, were engaged in financing the bankrupt's business through the use of trust receipts.

3. Defendant Admiral Credit Corporation filed its first Trust Receipt Financing Statement on March 29, 1962. This statement was renewed on April 3, 1963. Admiral filed another statement on April 1, 1964, which was renewed on March 31, 1965. Admiral filed another statement of trust receipt financing on January 27, 1966, and yet another on March 1, 1966. It is these last two statements which the trustee in bankruptcy contends to be defective. The January statement cited the trust receipt trustee as "(Pete Knight, Inc.) Charles W. Knight" instead of the true corporate name "Pete Knight Television & Appliance, Inc." The address was listed as "1530 West First Avenue" instead of "1565 West First Street." The March 1 statement is alleged to be defective because the entruster's name was merely typed in without a handwritten signature.

4. Defendant Redisco, Inc., filed its first Trust Receipt Financing Statement on January 13, 1964, and the continuation affidavit on December 14, 1964. Redisco filed another trust receipt financing continuation affidavit on January 6, 1966. The trustee in bankruptcy alleges that these filings failed for various reasons to comply with the North Carolina Statute on trust receipt financing.

5. On June 10, 1966, the two defendants, Admiral and Redisco, obtained the repossession of the appliances remaining in the hands of Pete Knight Television & Appliance, Inc., on that date for which they had trust receipts outstanding, pursuant to an action filed that day by them in Superior Court for breach of Trust Receipt Financing agreements against Pete Knight Television & Appliance, Inc.

6. On June 13, 1966, Pete Knight Television & Appliance, Inc., entered into voluntary bankruptcy by filing a petition in bankruptcy in the United States District Court for the Middle District of North Carolina.

## DISCUSSION

### 1. *Admiral Case*

Taking the case against Admiral first, the plaintiff claims that Admiral failed to comply with the provisions of the Uniform Trust Receipt Act (Chapter 45, § 46 et seq. of the General Statutes of North Carolina) in order to perfect its lien against certain inventory of Pete Knight Television & Appliance, Inc.; that the failure of the defendant to perfect its lien within four months prior to the filing of the petition in bankruptcy coupled with the taking of the property constitutes a "preference" within the meaning of § 60 of the Bankruptcy Act; and that, therefore, the trustee in bankruptcy is entitled to recover of the defendant the value of all the property repossessed.

Admiral, on the other hand, contends that it complied with the provisions of the Uniform Act and thereby perfected its lien against the inventory of the bankrupt which the defendant repossessed prior to the filing of the petition in bankruptcy.

For the reasons which follow, this Court finds that the filing was satisfactory within the provisions of the Uniform Act, and that therefore defendant had perfected its lien before four months prior to bankruptcy. Since the trust receipts were properly recorded at the times they were filed, Admiral has a valid lien on the goods superior to any claim of the trustee in bankruptcy. See Coin Machine Acceptance Corp. v. O'Donnell, 4 Cir., 192 F.2d 773 (1951). Since the Court reaches this decision, there is no need to consider the problem of the voidable preference posed by the plaintiff.

On the question of the "perfection" of the trust receipts, the plaintiff places great reliance on GMAC v. Haley, 329 Mass. 559, 109 N.E.2d 143 (1952), which was a case which arose under the Uniform Trust Receipts Act. The court held that the entruster's designation of the trustee's name as "E. R. Millen Company" instead of the correct designation, "E. R. Millen Co., Inc.," was not a sufficient filing to perfect the entruster's lien. The court in that case was faced with a policy decision on a matter on which there were apparently no precedents, and it chose to adopt the restrictive policy that filing requirements must be strictly complied with. The case of In re Excel Stores, 2 Cir., 341 F.2d 961 (1965), is to be noted in which Judge Medina noted the *Haley* case was a notorious example disapproved by the Uniform Commercial Code. While the Code and cases under it are not controlling in the case before this Court, it is an indication of the juridical disfavor into which the restrictive policy has fallen.

In the case at bar, the Trust Receipt document filed by Admiral on January 27, 1966, listed the trustee or dealer as "(Pete Knight, Inc.) Charles W. Knight" instead of the true name of the corporation "Pete Knight Television & Appliance, Inc." Also, the address was listed as "1530 West First Avenue" in-

stead of the true address, "1565 West First Street." Then, on March 1, 1966, Admiral filed another Trust Receipt Financing Statement, possibly to correct these discrepancies in the January 27 statement. The entruster's name was typed on the statement, but no handwritten signature was written on the document under "ADMIRAL CREDIT CORPORATION." The trustee in bankruptcy contends that this is not enough to comply with the filing requirements in G.S. § 45–58(a), and cites Wilshire Oil Company v. Costello, 9 Cir., 348 F.2d 241 (1965), which held that where a California statute required the signatures of the assignor and the assignee of accounts receivable, then the absence of the assignee's signature was fatal to the filing. This Court is not persuaded by that case, since it involved a complete lack of signature whereas the case at bar involves a typed-in signature with only the handwritten signature omitted. See Benedict v. Lebowitz, 2 Cir., 346 F.2d 120 (1965). In addition, the case at bar involves a financing statement filed just five weeks earlier in which the signature was properly in place. Therefore, there can be no question that the later March 1 filing was that of the entruster. Also, the plaintiff has made no contention that there was any lack of a good faith filing.

The defendant cites the case of Mickel-Hopkins, Inc. v. Frassinetti, 4 Cir., 278 F.2d 301 (1960). That case is quite similar to the case at bar and is quite persuasive for the defendant's position. The case arose because an intended conditional sale contract was inadvertently filed without the section stating that title was retained by the seller. The court began by stating what would be applicable language for the case at bar if the words "trust receipt" were substituted for "conditional sales contract." The appropriate words are included within the brackets in the quotation which follows from *Frassinetti:*

"The question is whether the intentions of the parties may be given effect in the circumstances. More precisely, was the instrument as recorded sufficient under North Carolina law[1] to put an interested person on notice of the conditional sales contract [trust receipts financing arrangement] unquestionably intended by the parties, but not expressed in conventional terms. We answer in the affirmative.

"Preliminarily, it is to be noted that there is no showing that anyone was actually harmed or misled by the irregularities or mistake in this case. It would thus be quite inequitable to deprive Mickel-Hopkins [Admiral] of its lien, and the North Carolina law does not require us to do so.

"Footnote 1. We must look to the law of North Carolina since the effect of the recording on the trustee in bankruptcy is determined by state law. Firestone Tire & Rubber Co. v. Cross, 4 Cir., 1927, 17 F.2d 417; and see Collier on Bankruptcy sec. 70.19, n. 51 and cases cited therein." (Material in brackets added)

The court went on to cite a number of North Carolina Supreme Court decisions, all of which overlooked defects in recording of one degree or another, finding that the recording which was done was enough to put careful and prudent examiners of the record on "reasonable inquiry." See Johnson Cotton Company v. Hobgood, 243 N.C. 227, 90 S.E.2d 541 (1955); Massachusetts Bonding & Ins. Co. v. Knox, 220 N.C. 725, 18 S.E.2d 436, 138 A.L.R. 1438 (1942). After citing the North Carolina decisions, the court concluded:

"In summary, no North Carolina case has been found which is precisely in point. [None has been cited to this Court either.] The decisions in this general area are sparse, and the holdings are inconclusive upon the question presently before us. They do, however, evidence a reluctance to enforce the formal requisites of the recording statute with inexorable strictness amounting to total disregard of resulting inequities.

"Thus, called upon to choose between enforcing a defectively framed yet recognizable conditional contract [trust

receipt financing statement] or treating it as a nullity for security purposes, we conclude, in the spirit of the North Carolina decisions, that the former is the choice indicated. * * We would be loath to create at the seller's expense an estate for distribution among creditors who were in no way injured by the * * * [defective filing]. The recording law was designed to prevent fraud and injustice to creditors; its salutary policy should not be so employed as unnecessarily to provide a trustee in bankruptcy with a windfall estate at the expense of one creditor." (Material in brackets added)

This language is quite applicable to the case at bar. It is dispositive of the trustee's contentions in the case against Admiral. The defects in Admiral's filing were not such as to mislead a searcher of the record making reasonable inquiry. Certainly, the two filing statements of January 27, 1966, and March 1, 1966, taken together, contain all the proper elements of a completely proper recordation. A diligent examiner could not help seeing what was intended. The identity of the entruster and the trustee, and their confirming signatures, were all present in the two instruments together. The trustee in bankruptcy shall not be allowed to circumvent this lien by use of technical defects in the record, especially, since there is no showing that any creditor was misled to any extent.

The fact that the four months cutoff date, February 13, 1966, came between the January 27 and March 1 filings is of no consequence, since Admiral had until March 31, 1966 to renew or file a new financing statement. This is because the last statement in effect was made on April 1, 1964, with a renewal in effect for an additional year.

### 2. *Redisco Case*

The main question in this case boils down to the construction to be put on the language of the recording statute in North Carolina, G.S. § 45–58:

"§ 45–58. *Filing and refiling concerning trust receipt transaction cov-*

*ering documents or goods.*—(a) Any entruster undertaking or contemplating trust receipt transactions with reference to documents or goods is entitled to file a statement * * *

"(d) Presentation for filing of the statement described in subsection (a), * * * shall constitute filing under this article * * * as to any * * goods falling within the description in the statement which *are within one year from the date of such filing* * * * the subject matter of a trust receipt transaction between the entruster and the trustee.

"(e) At *any time* before expiration of the validity of the filing, as specified in subsection (d), a like statement, as specified in subsection (a), or an acknowledged and probated *affidavit* by the entruster alone, * * * may be filed in like manner as the original filing. *Any* filing of such further statement or affidavit shall be valid in like manner and *for like period as an original filing,* and shall also continue the rank of the entruster's existing security interest as against all junior interests.

"(g) * * * The cancellation of the original statement of trust receipt financing shall operate as a cancellation of all *extensions* of that statement." (Emphasis added)

The issue arises in this manner: Redisco originally filed a statement in compliance with the statute on January 13, 1964. On December 14, 1964, Redisco filed a "continuation affidavit" within the original one year period which ran until January 13, 1965. On January 6, 1966, Redisco filed another continuation affidavit. The attack of the trustee in bankruptcy appears to be two-pronged: first, he contends that the December 14, 1964 continuation affidavit was "good" only until December 14, 1965, and therefore Redisco's filing on January 6, 1966 was too late and loses any validity it might have had; and second, he contends that even if the January 6, 1966 filing was timely, it fails because only one "continuation affidavit" can be tacked

onto a "statement." That construction of the statute cannot be accepted. The parties have not submitted cases to the Court construing this statute, and none have been independently discovered.

Subsection (e) speaks of "anytime before expiration of the validity of the [original] filing." In effect, this means that, anytime within one year, a continuation affidavit can be filed for an extension. The statute goes on to make such continuation "valid in like manner and for like period as an original filing." Therefore, since both the original statement and the continuation affidavit have a one year validity, the two together are effective for two years.

■ Therefore, the January 13, 1964 statement was effective until January 13, 1965, at which time the continuation affidavit took effect until January 13, 1966. Therefore, the January 6, 1966 statement was timely.

■ The question remains whether a second continuation affidavit can be tacked onto a prior one. Said another way, can you have more than one renewal of the original statement by use of a continuation affidavit? Nothing in the statute expressly limits the tacking of continuation affidavits. The first portion of § 45–58(e) seems to talk in terms of one original statement and one continuation affidavit. However, it is easily understood that the draftsman was trying to set out the method for renewing a statement and merely used language in the singular. The last sentence of § 45–58 in subsection (g) seems to solve the controversy. The language is "all extensions of that statement," clearly implying that more than one extension can be had of the original statement of trust receipt financing: a second continuation affidavit can be tacked onto a prior one.

Thus, the various filings of Redisco were sufficient to secure its lien against the claims of the trustee in bankruptcy. Any defects or discrepancies in the various filings were minor and would be controlled by the discussion in the portion dealing with the contentions against Admiral.

Attorney for the defendant will, within ten days of this date, present to the Court a proposed order consistent with this opinion.