In the Matter of **COLORADO MERCAN-TILE CO.**, a Colorado corporation, Debtor.

**O. M. SCOTT CREDIT CORPORATION,** Petitioner on Review,

v.

**COLORADO MERCANTILE CO.**, a Colorado corporation, Respondent on Review.

Bankruptcy No. 67-B-2317.

United States District Court
D. Colorado.

May 7, 1969.

Hyman D. Landy, Denver, Colo., for petitioner on review.

John J. Gaudio, Denver, Colo., for respondent on review.

**56**

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, Judge.

Petitioner seeks review of an Order of the Referee in Bankruptcy denying his motion for summary judgment incident to his application to reclaim a security interest in the amount of $15,863.00.

The relevant undisputed facts are that the Colorado Mercantile Company entered into a security agreement with the O. M. Scott Company concerning the purchase of trade merchandise on February 28, 1967. A financing statement regarding this agreement was executed and filed with the Secretary of State for the State of Colorado on March 6, 1967. This financing statement contained a stamped or machine signed signature of Mr. P. F. Williams as President of the O. M. Scott Credit Corporation. Colorado Mercantile submitted itself to the jurisdiction of the Bankruptcy Court on June 29, 1967, and subsequently an arrangement under the provisions of Chapter X of the Bankruptcy Act was confirmed.

The Referee concluded that the failure of petitioner to sign manually a financing statement rendered it void as to the other creditors and precluded the granting of the application to reclaim. The Referee also concluded that the financing statement was invalid because it erroneously identified the secured party. The security agreement was executed by the debtor and O. M. Scott and Sons Company. The financing statement, however, identified the secured party as the O. M. Scott Credit Corporation. It was signed (as previously noted) by P. F. Williams as President of the O. M. Scott Credit Corporation.

It appears in this connection that the O. M. Scott Credit Corporation is a wholly owned subsidiary of the O. M. Scott and Sons Company. Both corporations have their principal place of business in Marysville, Ohio. The O. M. Scott Credit Corporation was formed to execute and enforce security agreements with dealers of the products of the O. M. Scott and Sons Company. It would appear that these two corporations are treated as one for purposes of financing and collecting payment for goods sold and filing and prosecuting claims in bankruptcy and other reclamation proceedings. See Affidavit of Robert D. Neasse, executive officer of both corporations.

The issues for determination are first, whether the machine signature rendered the statement invalid or, secondly, whether an amendment adopted by the Colorado Legislature dispensing with the need of manual signatures, which amendment was passed after the filing here in question, should be given effect retroactively by reason (a) that it was procedural, or (b) that it is curative in nature.

A further question is whether the name confusion between O. M. Scott Credit Corporation and O. M. Scott and Sons Company is fatal and precludes the granting of the petition.

### I.

The Uniform Commercial Code was adopted in Colorado on July 1, 1966. See C.R.S., 1963, § 155–9–402(1) requiring a manual signature.[1] On June 16, 1967, this section was amended by deleting the second sentence which contains the requirement of a manual signature. See C.R.S. § 155–9–402(1) (Supp.1967). This amendment was adopted three months after the petitioner filed his financing statement. He contends that this is a minor deviation which should not be allowed to invalidate the state-

---

1. "A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. *The term 'signed', in addition to the definition under section 155–1–201(39), as used in this section, means a manual signature.*" (Emphasis added.)

ment. However, the terms of the statute are clear. A manual signature is required.

He also maintains that the amendment dispensing with this requirement should be given retroactive or curative effect. The Referee was of the opinion that although on its face this provision appears to be procedural, that inasmuch as it affected substantive rights, it should be regarded as substantive and thus is to be given prospective effect.

██ There can be no question but that retroactive application is permissible where the change is procedural or remedial in nature.[2] It is often difficult to distinguish between remedial or procedural statutes and those which are substantive in nature and thus affect vested rights. It seems clear to us, however, that the instant statute is of the former variety; that it is procedural; that it is of no consequence to either the debtor or the other creditors whether the signature is manual or printed. In our view, the matter is so clearly insubstantial as to require reversal. It would appear, moreover, that the Colorado General Assembly thought that this requirement of manual signature was at least unreasonable.

Retroactive application is also justified because of the curative nature of this amendment. Considered in the light of Article II, Section 11 of the Colorado Constitution and the cases which have construed it, it cannot be said that the instant amendment takes away or impairs a vested right acquired under existing laws and this is the test. Nor does it create a new obligation or impose a new duty or attach a new disability in respect to transactions or considerations already past.[3] As we view it, the retroactive application of the amendment in question does not operate to impair any vested right since there is no indication that any party reasonably relied on the part of the statute which was omitted from the 1967 reenactment. It cannot be said that the debtor would suffer the impairment of any vested rights since it clearly intended to execute a valid and binding financing agreement, nor does it appear that the creditors relied on this deficiency to their detriment.

## II.

As previously noted, the Referee also concluded that the financing statement was invalid because it erroneously identified the secured party. The security agreement was executed by the debtor and the O. M. Scott and Sons Company. The financing statement, however, identified the secured party as the O. M. Scott Credit Corporation and was signed by Mr. Williams in his capacity as President of the O. M. Scott Credit Corporation.

Petitioner argues that this error is excusable as "minor" and "not seriously misleading" under C.R.S. § 155-9-402(5) which provides:

"A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

2. See, e.g., Clews v. Stiles, 303 F.2d 290, 292 (10th Cir. 1960); Smith v. Putnam, 250 F.Supp. 1017, 1018 (D.Colo. 1965); Sawyer v. Taylor, 225 F.Supp. 555, 557 (D.Colo.1963); Hoen v. District Court In and For Arapahoe County, Eighteenth Judicial Dist., 159 Colo. 451, 412 P.2d 428, 19 A.L.R.3d 131 (1966); but see McCowan v. Equitable Life Assurance Society, 116 Colo. 78, 179 P.2d 275 (1947). This exception also permits retroactive application of procedural or remedial amendments. Federal Broadcasting System, Inc. v. Federal Communications Comm'n, 99 U.S.App.D.C. 320, 239 F.2d 941, 944 (1956). Procedural statutes are those "relating only to remedies or modes of procedure to enforce . . . rights or liabilities," as distinguished from laws which create, destroy or alter vested rights or liabilities. Smith v. Putnam, 250 F.Supp. 1017, 1018 (D.Colo.1965); see Bagsarian v. Parker Metal Co., 282 F.Supp. 766, 769 (N.D.Ohio 1968); Sawyer v. Taylor, 225 F.Supp. 555, 558 (D.Colo.1963).

3. Vail v. Denver Building & Construction Trades Council, 108 Colo. 206, 115 P.2d 389, 393 (1941); see Cobb v. International State Bank, 67 Colo. 488, 186 P. 529, 530-531 (1919).

The cases interpreting this section have generally given it a liberal construction. See, e.g., Benedict v. Lebowitz, 346 F.2d 120, 122 (2d Cir. 1967) (dictum); In re Excel Stores, Inc., 341 F.2d 961, 963 (2d Cir. 1965); In re Platt, 257 F.Supp. 478, 482 (E.D.Pa.1966); National Cash Register Co. v. Firestone & Co., Inc., 346 Mass. 255, 191 N.E.2d 471, 474 (1963); Sales Finance Corp. v. McDermott Appliance Co., Inc., 340 Mass. 493, 165 N.E.2d 119, 120 (1960); but see In re Carlstrom, 3 U.C.C.Rep.Serv. 764 (N.D.Me.1966). No case has been found, however, involving a financing statement erroneously identifying the secured party as a separate and existing corporate entity. The Referee apparently felt that this was decisive because he concluded:

"The error is not merely one of misspelling, or leaving out part of the name, or any other clerical or stenographic error. It is more basic because the creditor who is a party to the security agreement is a different corporate entity with a different name than the creditor who is named in the financing statement. * * *" Referee's Order of September 13, 1968, at 7–8.

The Referee failed to consider the close relationship between the corporate entities. The O. M. Scott Credit Corporation is a wholly owned subsidiary of the O. M. Scott and Sons Company, and is so closely related and intertwined with it in business dealings as to be regarded as one with it.[4] The record indicates that the two corporations are treated as one for the purpose of financing and collecting payment for goods sold and filing and prosecuting claims in bankruptcy and other reclamation proceedings.[5]

The "notice filing" system adopted by the Uniform Commercial Code requires that a secured party provide for public record enough information to alert interested parties that there may be a prior security interest. See, e.g., In re Excel Stores, Inc., 341 F.2d 961, 963 (2d Cir. 1965); Alloway v. Stuart, 385 S.W. 2d 41, 43 (Ky.Ct.App.1964); C.R.S. § 155–9–402, Comment 2. Several decisions have held that perfect accuracy in the identification of the debtor and secured party on a financing statement is not necessary as long as the statement provides sufficient additional information to enable a prudent examiner to ascertain the exact state of affairs through further inquiry.[6] For example, in In re Platt, 257 F.Supp. 478 (E.D.Pa. 1966), the financing statement identified the debtor as the Platt Fur Co., an unregistered fictitious name for the business of Henry Platt. The court nevertheless determined "the name Platt Fur Co. is sufficiently related to the name of the debtor, Henry Platt, to require those who search the records to make further in-

---

4. Affidavit of Robert D. Neasse, an executive officer of the O. M. Scott and Sons Company and the O. M. Scott Credit Corporation, para. 2.

5. Id. at para. 4.

6. See, e.g., In re Excel Stores, Inc., 341 F.2d 961, 964 (2d Cir. 1965) (debtor erroneously identified as Excel Department Stores instead of Excel Stores, Inc.); In re Fried Furniture Corp., 5 U.C.C. Rep.Serv. 750 (E.D.N.Y.1968) (Small Business Association may have its interest perfected by a financing statement filed by local bank which shares loan); In re Platt, 257 F.Supp. 478, 482 (E.D. Pa.1966) (debtor erroneously described as Platt Fur Co. instead of Henry Platt); National Cash Register Co. v. Firestone & Co., Inc., 346 Mass. 255, 191 N.E.2d 471, 474 (1963) (debtor's business erroneously identified as Cozy Kitchen instead of Kozy Kitchen); cf. Stafford v. Admiral Credit Corp., 280 F. Supp. 818, 820 (M.D.N.C.1968) (trust receipt trustee erroneously identified as Charles W. Knight instead of Pete Knight Television & Appliance, Inc.); Sales Finance Corp. v. McDermott Appliance Co., Inc., 340 Mass. 493, 165 N. E.2d 119, 120 (1960) (trust receipt debtor erroneously identified as McDermott Appliance Co., Inc., instead of McDermott Appliance Company, Inc.); but see Bank of North America v. Bank of Nutley, 94 N.J.Super. 220, 227 A.2d 535, 537 (1967) (erroneous identification of debtor as Kaplas instead of Kaplin invalidated financing statement).

vestigation." 257 F.Supp. at 482; cf. Stafford v. Admiral Credit Corp., 280 F. Supp. 818, 820 (M.D.N.C.1968); Plemans v. Didde-Glaser, Inc., 244 Md. 556, 224 A.2d 464, 469–470 (1966).

■ In our view the financing statement contains sufficient information. No searching creditor could be seriously mislead by the identification of the O. M. Scott Credit Corporation as the secured party. The debtor is accurately identified.[7] Even the most basic inquiry to the O. M. Scott Credit Corporation would reveal the close relationship between the corporations and resolve any confusion. Indeed, any such inquiry would lead to full disclosure of the exact state of affairs regarding the asserted security interest. In re Fried Furniture Corp., 5 U.C.C.Rep.Serv. 750 (E.D.N.Y.1968).

Finally, there is no evidence that any creditor was actually mislead. Invalidating the security interest under these circumstances would frustrate the liberal intent of the Commercial Code and would unnecessarily provide a trustee in bankruptcy with a windfall estate at the expense of one creditor. In re Fried Furniture Corp., 5 U.C.C.Rep.Serv. 750, 751 (E.D.N.Y.1968); see Lewis v. Manufacturers Nat'l Bank, 364 U.S. 603, 608–609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961); Mickel-Hopkins, Inc. v. Frassinetti, 278 F.2d 301, 305–306 (4th Cir. 1960); Stafford v. Admiral Credit Corp., 280 F.Supp. 818, 822 (M.D.N.C.1968).

We must hold that the Referee erred in denying petitioner's application to reclaim its security interest and that it was also error to deny petitioner's motion for summary judgment on its application. The cause is, therefore, remanded to the Referee for further proceedings.

7. It has been argued that accurate identification of the debtor is more important than that of the secured party because most record searching will be done by potential future creditors of the debtor. In re Overbrook & Barson's, Inc., 5 U.C.C.Rep.Serv. 546, 553

(E.D.Pa.1968). If a potential creditor seeks more detailed information, he may request it from the debtor and the burden shifts to the debtor to contact the secured party for specific details. C.R.S. § 155-9-208.