Lavonne J. DRYSDALE,
Plaintiff-Appellant,

v.

The CORNERSTONE BANK,
Defendant-Respondent.

No. 10256.

Missouri Court of Appeals,
Springfield District.

Feb. 6, 1978.

C. R. Rhoades, Pineville, for plaintiff-appellant.

Abe R. Paul, Pineville, for defendant-respondent.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

This case presents a question of priority between two creditors secured under Article 9 of the Uniform Commercial Code, codified in this State as §§ 400.9–101—9.-507, RSMo (1969) V.A.M.S.[1] It stands tacitly admitted that priority depends on the order of perfection by filing. Specifically, the question is whether plaintiff or defendant (bank) is entitled to certain items of personalty acquired by the debtor after the bank's financing statement was filed. The appeal is here upon an agreed statement of fact in lieu of a transcript as authorized by Rule 83.13. Therefore, and contrary to counsel's assertion that our review is gov-

1. References to statutes and rules are to RSMo (1969) V.A.M.S. and V.A.M.R.

erned by *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo.banc 1976), the only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated. *State ex rel. Ciba Pharmaceutical Products, Inc. v. State Tax Commission*, 382 S.W.2d 645, 651[1] (Mo.banc 1964); *Surface v. Ranger Ins. Co.*, 526 S.W.2d 44, 45[1] (Mo.App.1975). The trial court has held that the bank has a prior security interest in the property (except livestock) covered by the plaintiff's security agreement. We affirm.

The agreed facts, summarized as material here, are that on October 27, 1970, plaintiff and her husband agreed to sell a business known as Drysdale Ford Sales to Sam McAdams and his wife (debtor). The business consisted of a retail automobile dealership and garage located in Southwest City, Missouri. Plaintiff agreed to sell the entire business, including all the shop equipment, supplies and stock of merchandise.

The debtor, then in possession of the business, sought and obtained financing from the bank. On October 27, the date of the agreement of sale, the bank filed a financing statement in the county recorder's office. The financing statement recites: (1) the debtor's name and address as: Sam S. McAdams, Jr., and Anna Belle McAdams, Southwest City, Missouri, DBA Drysdale Ford Sales; (2) the name of the secured party as: The Corner Stone Bank, Southwest City, Missouri; and (3) that the statement covers collateral described as: "[A]ll contents of Drysdale Ford Sales, Southwest City, Missouri, including all parts, all shop equiptment [sic], all supplies . . . all funiture [sic], all tools and all stock of merchandise . . . ." The financing statement is signed by McAdams and his wife as debtors and by Darrell Spillars, an officer of the bank, on behalf of the secured party.

On November 6 the debtor executed a note payable to the bank in the amount of $10,337.69. Contemporaneously he executed and signed a security agreement on a printed form. By the terms of the agreement the debtor granted the bank a security interest in collateral described as: "[A]ll contents of Drysdale Ford Sales, Southwest City, Missouri, including but not limited to the following, . . . All Shop Equiptment [sic], All Tools, All Supplies, and all Furniture and Equiptment [sic]." The printed form then continues: ". . . together with all additions, accessions and substitutions thereto or therefor and *all similar property hereafter acquired*, hereinafter called 'Collateral.' " (our emphasis). Plaintiff had knowledge of this security agreement but not of its contents.

On January 16, 1975, the plaintiff made a "personal loan" to the debtor in the amount of $1,200.00. This debt was evidenced by a promissory note. Contemporaneously, the debtor executed a security agreement granting the plaintiff a security interest in eight head of cattle and 26 items of personalty. All the personalty included in plaintiff's security agreement can fairly be described, in the circumstances, as "equipment" within the meaning of § 400.9–109. Plaintiff's security agreement was filed with the county recorder in lieu of a financing statement.

Thereafter the debtor defaulted in payment of both notes. The bank attempted to secure possession of all the debtor's property (except the livestock) by placing its own lock on the accesses to the premises occupied by the debtor's business. Plaintiff made demand upon the bank for the equipment described in her security agreement. Her demand was refused. This litigation, originally an action in replevin, was thereafter commenced.

■ With some exceptions not material here, the proper issues for determination on any appeal are those stated in the "points relied on" part of the appellant's brief; questions not there presented will be considered abandoned. *Pruellage v. DeSeaton Corp.*, 380 S.W.2d 403, 405[3] (Mo.1964); *State ex rel. Beeler v. Raytown*, 453 S.W.2d 672, 674[2] (Mo.App.1970). With the observation that Missouri is still operating under the 1962 version of the U.C.C., we confine ourselves strictly to the very points briefed. There are two. The first point is that the bank's financing statement is "insufficient"

and further "seriously misleading" within the meaning of § 400.9–402(5) because the collateral is described as the contents of *Drysdale Ford Sales* and, as stipulated, the debtor did business as *McAdams Ford Sales* from March 31, 1970, up to the date of default. The appellant phrases her contention thus: "[I]t is appellant's contention that a financing statement describing property as under the name of one business, to-wit, Drysdale Ford Sales, does not give notice to prospective creditors of any security interest in properties acquired by a business known as McAdams Ford Sales."

As we understand this argument, the appellant concedes that collateral may be described generically in a financing statement, although she misconceives the basis upon which this rule rests. The sufficiency of the description of collateral in a financing statement may become a judicial question, e. g., as when the description is too abstract or when the creditor is guilty of overreaching. It is the statute itself, however, which provides that a financing statement is sufficient if it ". . . contains a statement indicating the *types*, or describing the items, of collateral." (our emphasis). § 400.9–402(1). Here, the bank's financing statement describes ". . . all shop equiptment [sic] . . . all furniture [and] all tools." This is sufficient, we think, to cover the debtor's equipment as "equipment" is defined by § 400.9–109(2).

Neither do we understand the appellant to contend that the collateral was physically moved, but if that is her point, it is sufficient to say that a change in the location of collateral does not, under the present law, require refiling or amendment of the financing statement, if the original statement was filed in the proper place. § 400.-9–401(3). The appellant has raised no question concerning the place at which the bank's financing statement was filed. The appellant does not argue that either Drysdale Ford Sales or McAdams Ford Sales were corporations. A change in a corporate debtor's name or location may create questions concerning the efficiency of a financing statement as notice to subsequent creditors without knowledge, see e. g., *Continen-*tal Oil Co. v. Citizens Trust & Sav. Bank, 397 Mich. 203, 244 N.W.2d 243 (1976), but no such question is presented on this appeal.

So, the substance of the appellant's point is that because the description of the collateral contained the fictitious or assumed trade name "Drysdale Ford Sales" and the individual debtor later transacted business under another trade name, the bank's financing statement was seriously misleading and ineffective to perfect its security interest. Such an argument might have merit if the bank's financing statement had been filed under the debtor's original trade name. *In re Leichter*, 471 F.2d 785 (2d Cir. 1972). In our case, the bank's financing statement was filed under the debtor's true name, Sam S. McAdams, Jr., and Anna Belle McAdams, Southwest City, Missouri, DBA Drysdale Ford Sales. There was, therefore, in the jargon of commercial lawyers, a "true name filing in a DBA case," which was effective to give notice of the bank's security interest to potential creditors. *In re Fowler*, 407 F.Supp. 799, 802–803[4, 5] and n. 5 (W.D.Okl.1975); *In re Platt*, 257 F.Supp. 478, 482[7] (E.D.Pa.1966). Appellant's first point is without merit.

■ The appellant further argues that the court erred in finding the bank was entitled to possession of items of personalty acquired by the debtor after October 27, 1970, because the bank's financing statement did not acknowledge an intended security interest in after-acquired property and was, therefore, insufficient to perfect such security interest pursuant to § 400.9–402.

With deference, counsel has mistaken the scheme and purpose of the Code. It is true, we suppose, that the Code does not *require* the use of two documents, a financing statement and a security agreement. So, as modern commentators note, there is no reason why a financing statement could not serve as a security agreement at least when accompanied by a note. R. Henson, Secured Transactions Under the Uniform Commercial Code § 3–9 (1973) [hereinafter cited as Henson]. As Professor Henson

points out, however, the purpose of a financing statement is simply to give notice to the world that designated parties have entered into a secured transaction covering described collateral; the details must be learned from the parties, Henson § 4–5, and *if* after-acquired property is to be included as collateral, the security agreement is where that matter should be provided for. Henson § 3–10. Such is the case law interpreting the 1962 Code; the debtor's intent to create a security interest in after-acquired property must be ascertained and judged by the language of the security agreement, not the financing statement. § 400.9–204(3); *National Cash Register Company v. Firestone & Co.*, 346 Mass. 255, 191 N.E.2d 471, 473, 475[3][5] (1963); *American Nat. B. & T. Co. v. Nat. Cash Register Co.*, 473 P.2d 234, 237–238[4] (Okl.1970); Henson § 3–10. Here, the language of the bank's security agreement is manifestly sufficient to create a security interest in after-acquired property and appellant's second point is likewise without merit.

For the reasons indicated, the judgment is affirmed.

All concur.