Brassard, J.
Plaintiff has brought this action in contract against the defendant corporation and Gary Rubin for failure to pay for goods sold and delivered to the defendant. After a trial, without jury, and based upon all the credible evidence, the court makes the following findings of fact and rulings of law.
FINDINGS OF FACT
The defendant, Everett Auto Parts of Marlboro, Inc. (“EAP”) was incorporated in December 1946. EAP was at all relevant times an automobile jobber which sold automotive parts to companies and individuals. On February 16, 1988, EAP changed its name to Everett Auto Parts Co., Inc.
In the fall of 1992, Gary Rubin, president of EAP, contacted the plaintiff, Middle Atlantic Warehouse Distribution, Inc. (“Middle Atlantic”), about buying automotive parts from Middle Atlantic. At that time, Mr. Rubin informed an employee of Middle Atlantic that EAP had two locations, but that all billing and shipping should be directed to EAP’s location in Marlboro.
On January 26, 1993, EAP executed a security agreement in favor of Middle Atlantic to secure all indebtedness of EAP to Middle Atlantic. The security agreement covered all of EAP’s inventory, equipment, accounts, and general intangibles. Mr. Rubin signed the agreement as president of EAP, but he signed on the line reserved for Middle Atlantic’s agent. Middle Atlantic did not sign the agreement.
On November 1, 1993, Middle Atlantic filed a financing statement with the Secretary of State covering all of EAP’s inventory, equipment, accounts, and general intangibles. The debtor’s name appears as “Everett Auto Parts of Marlboro, Inc."
On November 4,1994, Citizens Bank filed a financing statement with the Secretary of State covering the assets of Everett Auto Parts Co., Inc. The debtor’s name appears as “Everett Auto Parts Co., Inc.,” and the debtor’s address is identical to the debtor’s address on Middle Atlantic’s financing statement. Citizens Bank subsequently assigned its interest to Herbert Goodman. Mr. Goodman’s company eventually foreclosed on the assets of Everett Auto Parts Co., Inc.
EAP owes $65,364.11 for merchandise delivered by Middle Atlantic.
RULINGS OF LAW
The thrust of Middle Atlantic’s claim is that it did not receive what it had bargained for in the security agreement because Mr. Rubin provided it with the incorrect corporate name of EAP, thereby permitting Mr. Goodman to realize on collateral to which Middle Atlantic would otherwise have been entitled. The issues before the court are whether Middle Atlantic’s security agreement is valid, whether Mr. Goodman’s competing security interest takes priority over that of Middle Atlantic, and if so, whether Mr. Rubin is liable under the law of agency for the misstatement in the financing statement.
M.G.L.c. 106, §9-102 sets forth the formal requisites of security agreements. In particular, a “security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless the collateral is in the possession of the secured party pursuant to an agreement, or the debtor has signed a security agreement which contains a description of the collateral.” M.G.L.c. 106, §9-102(1). The secured party is not required to sign the security agreement. Id..
There is no question that EAP signed the security agreement in the present case. At issue is whether the signature is sufficient when it appears on the wrong line.
The court in In re J.A.G.G., Inc., 25 U.C.C.Rep. 1172 (D.Conn. 1979), held a security agreement to be valid where the debtor corporation’s name appears at the head of the agreement and the individual signature with *120 corporate capacity appears on the “by” line, but the corporate name is omitted from the signature section. The court in In re Garrett O. Driscoll & Assocs., Inc., dba Cape Cod Rod & Reel, 151 B.R. 634 (Bankr. D. Mass. 1993), went one step further by holding a security agreement to be valid where the corporate name appears at the head of the document, but the individual signature appears on the “by” line without the corporate name and without the corporate capacity.
The present case is similar to the two cases cited. The debtor’s name appears at the head of the document. Mr. Rubin signed the last page of the agreement on the “by" line with his corporate capacity, but the signature appeared under the secured party’s corporate name instead of the debtor’s name. This slight error would not mislead a reasonable person and does not invalidate the security agreement since it is clear that the parties intended to create a security interest. Baystate Drywall, Inc. v. Chicopee Savings Bank, 385 Mass. 17, 20-21 (1982).
The next issue is whether Mr. Goodman’s security interest had priority over Middle Atlantic’s security interest. This issue turns on whether Citizens Bank was on notice of Middle Atlantic’s filed financing statement despite the incorrect corporate name of the debtor.
The purpose of a financing statement is “merely to give subsequent purchasers or creditors notice of a possible security interest and furnish a starting point for further investigation.” 79 C.J.S. Secured Transactions §65. “The statute contemplates that the statement will supply only the minimum information to put a person searching the record on inquiry with respect to a possible security interest and that the complete state of affairs will be learned only after inquiry.” Id..
To this purpose, the statute requires that a financing statement give the names of the debtor and the secured party, be signed by the debtor, give an address of the secured party from which information may be obtained, give an address of the debtor, and contain a description of the collateral. M.G.L.c. 106, §9-402(1). The only question here is whether the debtor’s name as it appears on the financing statement is sufficient.
M.G.L.c. 106, §9-402(8) provides that a “financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.” The Massachusetts Supreme Judicial Court has held that where a financing statement incorrectly indicates the debtor as “Carroll, Edmund dba Cozy Kitchen 574 Wash. St. Canton, Mass.,” instead of “Carroll, Edmund dbaKozy Kitchen 574 Wash. St. Canton, Mass.,” the financing statement is nevertheless valid because the error is not seriously misleading. Nat'l Cash Register Co. v. Firestone & Co., Inc., 346 Mass. 255, 259-60 (1963). The Supreme Judicial Court has reached the same result with respect to the Uniform Trust Receipts Act. See Sales Finance Corp. v. McDermott Appliance Co., Inc., 340 Mass. 493 (1960) (financing statement filed under “McDermott Appliance Inc.” instead of “McDermott Appliance Co., Inc."). The federal courts have addressed the issue in the same manner. See, e.g., In re Kittyhawk Television Corp., 516 F.2d 24, 28-29 (6th Cir., 1975) (holding debtor’s name change from Kittyhawk Broadcasting Corporation to Kittyhawk Television Corporation did not render financing statement seriously misleading); In re Excel Stores, Inc., 341 F.2d 961, 963 (2nd Cir., 1965) (holding financing statement indicating name of debtor as “Excel Department Store” instead of “Excel Stores, Inc. ” not seriously misleading); Matter of Southern Supply Co. of Greenville, N.C., Inc., 405 F.Supp. 20 (E.D.N.C. 1975) (holding financing statement indicating name of debtor as “Southern Supply Co.” instead of “Southern Supply Company of Greenville, N.C., Inc.” not seriously misleading); In re Colorado Mercantile Co., 299 F.Supp. 55, 58-59 (D.Colo. 1969) (holding financing statement indicating name of debtor as “O.M. Scott Credit Corporation” instead of “O.M. Scott and Sons Company” not seriously misleading).
The filing by Middle Atlantic was effective to give notice to subsequent creditors of a possible security interest in Everett Auto Parts Co., Inc.’s assets. A creditor of Everett Auto Parts Co., Inc. searching the files could not ignore the filing of a financing statement with a name as similar as Everett Auto Parts of Marlboro, Inc. and with an identical address. Inquiry to Middle Atlantic would have revealed a valid security interest. To hold that this error is misleading would be the sort of “fanatical and impossibly refined reading” which the drafters of Section 9-402 sought to avoid. M.G.L.c. 106, §9-402, comment 9; see also Matters of Reeco Elec. Co., Inc., 415 F.Supp. 238, 241, and cases cited.
Citizens Bank was therefore on notice of Middle Atlantic’s security interest when Citizens Bank filed its financing statement a year after Middle Atlantic. Mr. Goodman assumed the priority date of Citizens Bank when he accepted the assignment of the financing statement. M.G.L.c. 106, §9-302(2). French Lumber Co., Inc. v. Commercial Realty & Finance Co., Inc., 346 Mass. 716, 719 (1964). Middle Atlantic’s security interest took priority over that held by Mr. Goodman. M.G.L.c. 106, §9-312(5).
It is therefore not necessary to reach the question of whether Mr. Rubin has any liability for representing to Middle Atlantic that his company’s name was Everett Auto Parts of Marlboro, Inc. Middle Atlantic received exactly what it bargained for: a valid security interest which had priority over any subsequent security interest in the same collateral.
ORDER
It is therefore ORDERED that judgment enter for defendant Gary Rubin, and for the plaintiff against Everett Auto Parts Co., Inc. in the amount of $65, 364.11.