422 P.2d 366

**STREVELL–PATERSON FINANCE COM-PANY, Plaintiff-Appellee,**

**v.**

**Gene MAY, d/b/a Doc Holliday's Hock Shops, Defendant-Appellant.**

**No. 8102.**

Supreme Court of New Mexico.

Jan. 3, 1967.

McAtee, Marchiondo & Michael, Albuquerque, for appellant.

Louis J. Vener, Albuquerque, for appellee.

## OPINION

E. T. HENSLEY, Jr., Chief Judge, Court of Appeals.

This is an appeal from a judgment in favor of the plaintiff secured party in the amount of $475.00 plus interest against the defendant pawnshop for conversion of a guitar and its amplifier.

The facts disclose that on July 12, 1963, Elverio Chavez executed an instrument, entitled a "chattel mortgage", in favor of the plaintiff describing a Stratocaster fender guitar and a Bandmaster fender amplifier to secure a debt. The plaintiff's address did not appear on the instrument nor did the plaintiff sign it. Otherwise the document was complete. The instrument was filed for record in the Office of the County Clerk of Bernalillo County. On November 8, 1963, Chavez traded in the Stratocaster guitar for a Jazzmaster guitar. A sales agreement was executed covering the transaction and recorded on December 18, 1963. On June 10, 1964, an instrument, also entitled "chattel mortgage", was executed covering the Jazzmaster guitar and the previously mortgaged Bandmaster amplifier. It was not recorded until June 29, 1964. On June 22, 1964, Chavez pawned the guitar and amplifier to the defendant pawnshop. Later Chavez defaulted on his payments to the plaintiff who under the terms of the mortgage became entitled to repossess the guitar and amplifier. The plaintiff obtained possession of the pawn tickets and presented them to the defendant who refused to deliver or return the guitar and amplifier because they had been sold to a third party. The district court found the value of the guitar at the time of conversion to be $200.00 and the value of the amplifier at such time to be $275.00.

The defendant contends that the court erred in concluding the plaintiff was entitled to maintain conversion against the defendant because the plaintiff did not comply with § 50A–9–402(1), N.M.S.A. 1953. If the plaintiff had a valid security interest, properly perfected before the pledge to the defendant pawnshop, it had a right to possession of the guitar and amplifier upon Chavez' default and may maintain an action of conversion against the pawnshop for refusing to return or deliver such goods. Defendant does not question the validity of the plaintiff's security interest. Defendant's argument is that the security agreement was improperly perfected and is consequently unenforceable against third persons. If so, plaintiff's action for conversion must be dismissed.

At the outset we note that filing is not necessary to perfect a security

interest taken or retained by a seller or other person who finances the actual purchase of consumer goods, § 50A–9–302(1)(d), N.M.S.A.1953. Here the guitar and amplifier, however, were not "consumer goods" as they were primarily used by Chavez to perform in night clubs and are "equipment", § 50A–9–109(2), N.M.S.A. 1953. Consequently, perfection by filing of the security agreement was required.

Appellant apparently contends that since the agreement filed is described as a "chattel mortgage" that it does not meet the requirements of § 50A–9–402(1), supra, which requires a "financing statement." Some clarification of the terms "security interest", "security agreement", and "financing statement" is necessary.

As a matter of terminology the Code makes two terms grow where one grew before.

"Mortgage, for example, referred both to the interest created by the security transaction and to the document of writing which evidenced the interest. Under the Code we have 'security interest' for the former and 'security agreement' for the latter." I Gilmore, Security Interests in Personal Property 346 (1965).

§ 50A–9–203, N.M.S.A.1953 says " * * * a security interest is not enforceable [without] a security agreement. * * * "

■ The fact that an agreement offered for filing is denominated a "chattel mortgage" is immaterial. The traditional forms of security agreements in use before the enactment of § 50A–9–203, N.M.S.A.1953 and § 50A–9–402, supra, may continue to be used after their enactment. Uniform Commercial Code, § 9–101, comment 2. A "security agreement" is defined as "an agreement which creates or provides for a security interest. * * * " § 50A–9–105 (1) (h), N.M.S.A.1953. A "security interest" is defined as " * * * an interest in personal property or fixtures which secures payment or performance of an obligation. * * * " § 50A–1–201(37), N.M.S.A.1953. It is clear that the old form "chattel mortgage" meets the definition of a "security agreement." § 50A–9–402(1), supra, specifically provides that a copy of the security agreement is sufficient as a financing statement if it is signed by the debtor and secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items of collateral. Thus, an instrument denominated as a "chattel mortgage" may be filed as a financing statement so long as it contains the necessary information. Ops. N.M. Atty. Gen. 62–2, Jan. 3, 1962. We must now determine whether the instrument contained the information required by § 50A–9–402 (1), supra.

■ Appellant contends that since the secured party did not sign the instrument that § 50A–9–402(1), supra, was not satisfied. We note that the Uniform Commercial Code is to be construed liberally and applied to promote its underlying purposes and policies § 50A–1–102(1), N.M.S.A.1953. Professor Gilmore, Security Interests in Personal Property, supra, says:

> "Confusingly, and unnecessarily, the formal requisites of the security agreement (§ 9–203) and the formal requisites of the financing statement (§ 9–402) are not the same. Under § 9–203, all that is required in the 'security agreement' is the debtor's signature and a description of the collateral * * * Under § 9–402, however, the 'financing statement' must contain the signatures of both the secured party and the debtor and must also give addresses for both of them. The financing statement must also contain descriptions of collateral * * *."

Professor Gilmore's reasoning, page 347, in resolving the conflict is persuasive:

> "* * * There is no sensible reason for the discrepancies between the formal requisites of § 9–203 and § 9–402. With respect to signatures § 9–203 seems to be right: the debtor's signature on a document binding him to liability is obviously essential; there seems to be no reason for the secured party's signature to be required on either 'agreement' or 'statement' * * *."

■ We conclude that the lack of the secured party's signature does not make the instrument defective within the meaning of § 50A–9–402(1), supra. The defendant had due notice even though the secured party did not sign the instrument. Alloway v. Stuart, Ky., 385 S.W.2d 41.

■ The lack of the secured party's address is more difficult. § 50A–9–402(1) says:

> "A financing statement is sufficient if it * * * gives an address of the secured party from which information concerning the security interest may be obtained * * *."

As in the situation of no signature by the secured party, which we have already resolved, there is a conflict between § 50A–9–203 and § 50A–9–402, supra. The latter requires the address of the secured party while the former does not. Professor Gilmore, Security Interests in Personal Property, 347, supra, notes:

> "The addresses are required in the document which is filed for record and, for simplicity's sake, might as well be included in the underlying 'agreement' * * *."

In this case, the plaintiff's name appears only on the cover of the instrument of July 12, 1963. We cannot say that the plaintiff substantially complied with the requirements of § 50A–9–403(1). See In re Smith, 205 F.Supp. 27 (E.D.Penn., 1962).

Consequently, the instrument of July 12, 1963, is defective as financing statement and did not give notice to the defendant of the plaintiff's security interest in the guitar and amplifier.

Our conclusion is not inconsistent with the intent of the Uniform Commercial Code to adopt a system of "notice filing." Section 9–402, Uniform Commercial Code, comment 2 says:

" * * * The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. * * *"

If the secured party's address does not appear it would be an undue burden on the person seeking such information to find him. The filing system will perform its intended function only if secured party substantially complies with the requirements of § 50A–9–402(1), supra.

We need not consider the effect of the instrument, denominated "Purchase Agreement", of November 8, 1963, as it was not considered by the district court. Nor do we need to consider defendant's remaining points since we have determined that the instrument of July 12, 1963, does not meet the requirements of § 50A–9–402(1), supra. The plaintiff did not perfect its security interest and cannot maintain an action against the pawnshop in conversion. The cause will be remanded to the District Court with direction to vacate the judgment in favor of the plaintiff and enter a new judgment dismissing the plaintiff's complaint.

It is so ordered.

CHAVEZ and COMPTON, JJ., concur.