MID-AMERICA DAIRYMEN, INC., A CORPORATION, APPELLANT,
v. NEWMAN GROVE COOPERATIVE CREAMERY COMPANY,
INC., A CORPORATION, APPELLEE.
214 N. W. 2d 18

Filed January 11, 1974. No. 39020.

Richard E. Mueting, for appellant.

Jewell, Otte, Gatz, Magnuson & Collins, for appellee.

Heard before SPENCER, SMITH, and CLINTON, JJ., and BRODKEY and HASTINGS, District Judges.

BRODKEY, District Judge.

This is a case of first impression in Nebraska and involves an interpretation of the Nebraska Uniform Commercial Code. In this case, the plaintiff seeks to recover possession of a certain milk tank covered by a chattel mortgage as security for the payment of a promissory note. The case was tried to the court upon facts stipulated by the parties to this action, no evidence being received, other than certain documentary evidence introduced and received by stipulation of the parties, principally the promissory note and chattel mortgage in question. The trial court entered judgment for the defendant. We affirm.

So far as material to a decision in this case, the parties stipulated the facts to be as follows: Plaintiff, Mid-America Dairymen, Inc., is a Kansas corporation, licensed and qualified as a foreign corporation to transact business in the State of Nebraska; and is the successor in interest to Central States Dairy Cooperative (non-stock), a Nebraska corporation, by virtue of articles of merger executed and filed in the manner provided by law. By the terms of such articles of merger the plaintiff is successor in interest to, and owner of, all the property of Central States Dairy Cooperative (non-stock), real, personal, and mixed, including all bills receivable, promissory notes, and security interests of every kind and nature.

On or about November 25, 1969, one William H. Gallentine, of Aurora, Hamilton County, Nebraska, for value received, executed and delivered to Central States Dairy Cooperative (non-stock), Omaha, Nebraska, as payee, his promissory note in the amount of $3,081.90; and as security for said note executed and delivered to the payee, a security instrument captioned a chattel mortgage, on the following described property as collateral: One farm bulk milk pick-up tank, 1966, Kari-Kool plastic 2,100 gallon; and which was filed by the county clerk of Hamilton County, Nebraska, on the 16th day of Decem-

ber 1969. The parties further stipulated that subsequent to December 16, 1969, the defendant, Newman Grove Cooperative Creamery, "did purchase, or otherwise acquire possession" from William H. Gallentine a 1966 farm bulk milk pick-up tank Kari-Kool plastic 2,100 gallons, which tank was the identical property described as collateral in the instrument captioned a chattel mortgage, previously referred to. The parties further stipulated that on or about March 18, 1970, the said William H. Gallentine failed and neglected to make the payment then due and payable upon said obligation; that despite formal demands he has made no further payments on said note pursuant to said agreement; that the said William H. Gallentine is in default in the payment of the note referred to; and that the balance due and owing on said promissory note is $1,797.10.

Finally, it was stipulated by the parties that on April 8, 1970, plaintiff's attorney made formal demand in writing upon the defendant, Newman Grove Cooperative Creamery Co., Inc., for the delivery of the possession of said collateral to the plaintiff; and that the defendant has refused to do so and still detains said property from the plaintiff.

The only issue is one of law pertaining to the legal effect that the filing of the chattel mortgage in question in Hamilton County, Nebraska, has upon a subsequent purchaser under the laws of the State of Nebraska.

The chattel mortgage involved herein, and received in evidence as exhibit 1, is a regular printed chattel mortgage form, commonly obtainable at most stationery stores or other establishments selling stock legal forms. The only handwritten signature appearing on the form is that of the mortgagor, "Wm H Gallentine Jr," appearing at the bottom of the instrument. The name of the mortgagor is typed in at the top of the form and appears as "William Gallentine—Aurora, Nebraska." The name of the mortgagee is also typed in at the top of the form,

in the space provided therefor, as "Central States Dairy Cooperative—Omaha, Nebraska." Also typed on the form is a description of the collateral covered by said mortgage, as previously described.

At the outset, we wish to comment that the stipulation of facts entered into by the parties to this action is deficient in many respects which would be enlightening and helpful to the court in disposing of this controversy. Among these deficiencies are the nature of the property involved, i.e., whether the milk tank covered by the chattel mortgage would fall into the category of "consumers goods," "equipment," "farm products," or "inventory." Separate provisions are contained in the Nebraska Uniform Commercial Code dealing specifically with and governing the rules relating to the various types of property mentioned. Also missing from the stipulation are facts as to the nature of the transaction and the background relating to same. For example, whether the property was purchased by the Central States Dairy Cooperative (non-stock) from the plaintiff, Mid-America Dairymen, Inc., a corporation, and the note and chattel mortgage given at that time in payment therefor; or whether there was an outright loan made from the plaintiff to Central States Dairy Cooperative. Also the status of the defendant, Newman Grove Cooperative Creamery Company, Inc., as a bona fide purchaser for value and without notice is open to question under the stipulation of facts, said stipulation merely stating that the defendant "did purchase or otherwise acquire possession for a valuable consideration" the collateral covered by the chattel mortgage. However the parties have not raised the issues which a complete revelation of the facts might have suggested, and we shall not do so. The case was briefed and orally argued to this court on appeal upon the sole issue of the sufficiency of the chattel mortgage filed with the county clerk of Hamilton County, Nebraska, to serve both as a security agreement and financing

statement under the Uniform Commercial Code, and particularly whether it complies with the requirements of section 9-402, U. C. C.; and we shall confine our discussion to those issues.

There is little or no doubt that the Nebraska Uniform Commercial Code applies to chattel mortgages, and traditional distinctions of security devices are not retained. § 9-101, Comment, U. C. C.; § 9-102, Comments 1 and 2, U. C. C. As between the parties, a chattel mortgage is a "secured transaction" under the Uniform Commercial Code. Strevell-Paterson Finance Co. v. May, 77 N. M. 331, 422 P. 2d 366 (1967); Anderson v. First Jacksonville Bank, 243 Ark. 977, 423 S. W. 2d 273 (1968). "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. § 1-201 (37), U. C. C. "Security Agreement" is an agreement which creates or provides for a security interest. § 9-105 (1) (h), U. C. C. The only requirement for the enforceability of nonpossessory security interest in cases not involving land are (a) a writing; (b) the debtor's signature; and (c) a description of the collateral or kinds of collateral. § 9-203, U. C. C., and Comment 1 thereunder. There is little doubt that the chattel mortgage signed by the debtor in this case and thereafter filed, complies with all the foregoing requirements. A copy of the security agreement is also sufficient as a financing statement if it contains the information required by section 9-402, U. C. C., and Comments thereunder. See, also, Benedict v. Lebowitz, 346 F. 2d 120 (1965); Kaiser Aluminum & Chemical Sales, Inc. v Hurst, 176 N. W. 2d 166 (Iowa, 1970). It has also been held that a financing statement may also serve as a security agreement if it meets the requirements of the statute defining a security agreement. Evans v. Everett, 279 N. C. 352, 183 S. E. 2d 109 (1971). This latter case also holds that although the Uniform Commercial Code contemplates the execution of two separate writings, it

does not prohibit the combination of a security agreement and the financing statement.

We now devote our attention to a consideration of section 9-402, U. C. C., which sets forth the formal requisites of financing statements, to determine whether or not the chattel mortgage filed in the instant case complies with such requirements. That section provides, among other things, as follows: "(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties. . . . (5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." See also the official Comments to the above section which are enlightening and of assistance in understanding and interpreting section 9-402, U. C. C.

It is clear from the above section that the formal requisites of a financing statement are two: (1) The signatures and addresses of both parties; and (2) a description of the collateral by type or item. Subsection (5) of the above section also makes it clear that a financing statement substantially complying with the requirements of the section is effective even though it contains minor errors which are not seriously misleading. A comment to subsection (5) is as follows: "Sub-

section (5) is in line with the policy of this article to simplify formal requisites of filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves. As an example of the sort of reasoning which this subsection rejects, see General Motors Acceptance Corporation v. Haley, 329 Mass. 559, 109 N. E. 2d 143 (1952)." In the instant case defendant claims that the plaintiff's chattel mortgage was insufficient under the laws of the State of Nebraska, particularly under section 9-402, U. C. C., to place the defendant on notice of any security interest that the plaintiff may have had in the collateral for two principal reasons: (1) The lack or insufficiency of the address of the secured party from which information concerning the security interest may be obtained; and (2) the absence of the creditor's signature. We address ourselves first to a consideration of the sufficiency of the address of the secured party, which is one of the requirements set forth in section 9-402, U. C. C.

As previously stated, the only reference to such address contained in the chattel mortgage in question is the typewritten portion designating the name of the mortgagee on said form as "Central States Dairy Cooperative—Omaha, Nebraska." No street address of the creditor is set out anywhere in or on said chattel mortgage. Likewise there is no signature of the creditor appearing on the document unless the typed name of the mortgagee, as filled in on said form, may be considered as such signature.

The trial court held that the address "Omaha, Nebraska" was not a substantial compliance with the requirements of section 9-402, U. C. C., with reference to providing the address of secured party; and that the filing of exhibit 1 in Hamilton County on December 16, 1969, was insufficient to give notice of creditor's

security interest to a subsequent purchaser. We agree.

The obvious purpose of requiring an address of the secured party on a financing statement is to enable a credit searcher to contact the party in question for the purpose of obtaining information about the security agreement. In re Raymond F. Sargent, Inc., 8 U. C. C. Rptng. Serv. 583 (U. S. D. C., D. Me., 1970). Section 9-402, U. C. C., adopts the system of "notice filing." See Comment 2 under the above section. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described; and further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. The issue to be determined is how much additional inquiry must a creditor or credit searcher make under the above statute. Carried to its ultimate conclusion, it might be argued that once a searcher of the record is made aware of an outstanding security interest in the collateral, an absolute duty would devolve upon him to locate the creditor and obtain the pertinent information from him, even to the point of hiring a private detective to do so. Obviously this is not required, even though the avowed purpose of the Uniform Commercial Code was to liberalize such requirements and minimize the amount of information which the records themselves must disclose. In re Carlstrom, 3 U. C. C. Rptng. Serv. 766, (U. S. D. C., D. Me., 1966); In re Excel Stores, Inc., 341 F. 2d 961 (1965). On the other hand excess liberality in interpretation might well result in an unworkable system for giving notice to third parties, and place an undue and unreasonable burden upon those searching the records; and defeat the very purpose of the Uniform Commercial Code. The cases appear to be evenly divided as to whether a literal compliance with the language of the statute is necessary, or whether the omission or failure to comply with the statute regarding setting forth the address of the

creditor are minor errors, particularly if they do not seriously mislead anyone. Decided cases fall into two groups. One group appears to adopt a strict construction and require literal, or almost literal, compliance with the words of the statute, and appear to conclude under the particular facts of the case that the compliance involved was deficient as a matter of law. Another group appears to be more liberal, attempting to follow the avowed purpose of the statute, and have held under the facts of the particular case that the omissions of addresses, or complete address, are not necessarily fatal errors. These cases treat the problem as a question of fact, that is, the omission will be fatal only if, under the facts of the case, it effectively precludes the notice function of the statement.

The case of Strevell-Paterson Finance Co. v. May, 77 N. M. 331, 422 P. 2d 366 (1967), is illustrative of the first group of cases and appears to treat the omission of the street address of the creditor, and consequent unperfection, as a matter of law. Strevell-Paterson Finance Co. v. May, *supra*, is very similar to the present case. In that case the defendant had executed an instrument entitled a chattel mortgage in favor of the plaintiff, and plaintiff's address did not appear on the instrument, nor did plaintiff sign it. The court held that where the instrument was denominated a chattel mortgage and was executed by the buyer and recorded, and when the seller's address did not appear on the instrument, said instrument was then defective and did not perfect the seller's security interest. The court reasoned that if the secured party's address did not appear, it would be an undue burden on the person seeking such information to find him. A similar result was reached in the case of In re Smith, 205 F. Supp. 27 (Pa., 1962), which however involved the lack of the debtor's address from the financing statement. The court held that this was not a substantial compliance

with the formal requirements of the code. Other cases suggest in dicta they would follow that result. See, In re Childress, 6 U. C. C. Rptng. Serv. 549 (U. S. D. C., E. D. Tenn., 1969); In re Raymond F. Sargent, Inc., 8 U. C. C. Rptng. Serv. 583 (U. S. D. C., D. Me., 1970). Of special interest is the case of Burlington Nat. Bank v. Strauss, 50 Wis. 2d 270, 184 N. W. 2d 122 (1971), in which the Supreme Court of Wisconsin held that although the creditor's signature appeared in the body of the installment conditional sales notes securing debtor's purchases of cattle from creditor, where notes only had name of town after name of creditor, who in fact lived outside the town, information contained in notes was not sufficient to substantially comply with the statute setting forth formal requisites of financing statements; and thus creditor did not perfect its security interest by filing the notes, and was not entitled to priority protection against the after-acquired clause of security instrument of bank which had made loan to debtor, even if bank might have, in fact, known of creditor, his identity, and residence, and was not mislead. In its opinion the court stated: "However, we do not think that Strauss' name without an address fulfills the second purpose of identification. In Strevell the lack of signature was held not to be a fatal defect but the lack of an address was because the filing system provided by the code could not perform its intended function of identifying the secured debtor. It is true, three of the notes had the word 'Harvard' after Strauss' name and were dated in Harvard, Illinois. However unless Harvard, Illinois, is sufficiently small or Strauss is sufficiently well known, two points not covered by the record, a creditor located outside of Harvard, Illinois, would have a difficult task trying to contact Strauss for information concerning his security interest. Strauss in fact did not live in Harvard but on rural route two. An address must be sufficiently complete to enable a

prudent man using reasonable care to locate the secured party. We hold the information contained in the conditional sales notes is not sufficient to substantially comply with sec. 409.402 (1) (a), Stats., because it does not fulfill the purposes of the information and notice contemplated by that section. It is immaterial that the bank may have, in fact, known of Strauss, his identity and residence and was not misled; the financing statements are deficient."

On the other hand, other jurisdictions have taken a more liberal view of the matter and have held that deficiencies in the address of the secured creditor contained in the financing statement, or complete lack of such address, are not necessarily fatal. In the case of In re Bengston, 3 U. C. C. Rptng. Serv. 283 (U. S. D. C., D. Conn., 1965), the court held that since the purpose of the requirement of the address of the secured party in the financing statement is to give an address from which information concerning the security interest may be obtained, the address of the secured company given as "Coca-Cola Bottling Co., East Hartford, Conn.," was not insufficient, there being only one company of that name in East Hartford or in the telephone directory of greater Hartford so that no creditor would have difficulty in reaching the secured party and no reasonable person would be "seriously misled" by the address given. In Silver v. Gulf City Body & Trailer Works, 432 F. 2d 992 (1972), the court held that under sections of Alabama's Uniform Commercial Code mandating liberal interpretation and uniformity among states, the address "Box 2146, Fort Worth, Texas" as found on the financing statement, was in substantial compliance with the code provision that a financing statement is sufficient if it gives an address of the secured party from which information concerning the secured interest may be obtained. In its opinion the court noted: "An examination of this law quickly discloses

the annals of Uniform Commercial Code litigation are bare of any challenge to the sufficiency of an address with such postal cogency." The court also stated: "No creditor would have any difficulty in reaching the secured party with the information contained in the financing statement. No reasonable person would be 'seriously misled' by this address of the secured party." The court also held that since the record did not disclose there was more than one post office box No. 2146 in Fort Worth, Texas, the address in that case was an equally efficient direction to one interested in acquiring additional details.

The case of Rooney v. Mason, 394 F. 2d 250 (1968), has gone further than any other case in the direction of liberality in sustaining the validity of a financing statement. In that case a "Notice of Agreement" to sell a drugstore was filed as a financing statement under the Wyoming Uniform Commercial Code. Neither the address of the debtor or creditor appeared on the document. The court stated: "The Wyoming Courts might reasonably hold that a creditor examining the records is put on notice to make further inquiry upon seeing the notice of the agreement. Further, the fact that the addresses of both parties were readily available and known by virtually all creditors could reasonably be found sufficient to make unnecessary the listing of the addresses of the parties." In its opinion the court stated: "The court took as established that Thomas Mason was a resident of Cheyenne, Wyoming, and had lived there and been in business in Cheyenne for many years prior to and continuously since December 31, 1962, and had maintained both telephone and Cheyenne City Directory listing for both his residence and business addresses during all the above time; that he knew and dealt with the suppliers of inventory items for the drugstore while operated by him, the same suppliers who were listed by the bankrupts as creditors in their schedules to

their petition in bankruptcy and further that these creditors knew or could readily have known the address of Thomas F. Mason. The court further stated that from December 31, 1962, the creditors listed by the Johnsons knew the business and home addresses of James and Dolores Johnson and were in continual contact with them at such addresses." In the Rooney case the court also cited and discussed Strevell-Paterson Finance Co. v. May, *supra,* and In re Smith, *supra,* and made the following comment with respect to them: "Either of the courts might have created an exception had, as in the present case, the addresses been readily available and known to all creditors."

In the case of Silver v. Gulf City Body & Trailer Works, *supra,* the court commented on the Rooney case stating: "The overall thrust of Rooney and other cases in this area is to uphold validity if sufficient information can reasonably be gleaned from the filing to enable those desiring to reach the secured party to do so." See, also, In re Bennett, 6 U. C. C. Rptng. Serv. 995 (U. S. D. C., W. D. Mich., 1969), which discusses the Rooney case and contains an analysis of the conflicting lines of decisions.

We think it is clear from the cases above cited that the question of the sufficiency of the address of the secured creditor in a financing statement should be a question of fact rather than a question of law. Justice would so dictate. An address consisting of the city and state only might well suffice in one set of circumstances, and yet be totally insufficient under another set of facts. In the instant case there is nothing in the facts stipulated between the parties, or any other evidence, touching upon this problem. There is nothing in the record from which the court can ascertain whether the secured creditor in this case, Central States Dairy Cooperative, was or was not listed in the Omaha city directory or in the Omaha telephone book, or for

that matter whether any of the interested parties had knowledge of the address of the secured creditor, or any other information which would have facilitated contacting said secured creditor. In the absence of such evidence, the court must conclude that the address of the secured creditor in this case was insufficient to comply with the requirements of section 9-402, U. C. C.

The defendant has also contended that the financing statement was defective because of the absence of the creditor's signature. In view of the finding of the court with reference to the insufficiency of creditor's address, it is unnecessary for us to decide this point. We note in passing, however, the definition of "signed" in section 1-201 (39), U. C. C. It is there stated that: " 'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing." Assuming, without deciding, that the typewritten name of the mortgagee in the chattel mortgage involved in this case might possibly suffice as a signature of the creditor, nevertheless, there is nothing in the facts stipulated by the parties, or in the record, which in any way throws any light on the intention of the secured creditor to use his typed name as mortgagee in the financing statement as his signature in compliance with the requirements of the statute. A similar situation was involved in the case of Maine League Federal Credit Union v. Atlantic Motors, 250 A. 2d 497 (Me., 1969). The facts in that case were even stronger than those in the instant case, but the court there held that the case did not come within the bounds of an intended use of a symbol as a signature, stating: "The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing."

We conclude that the trial court was correct in its decision in this case and we affirm that decision.

AFFIRMED.