ARTHUR H. LINDSAY AND ETHEL D. LINDSAY, HUSBAND AND WIFE, APPELLEES, V. FIRST NATIONAL BANK, BAYARD, NEBRASKA, A CORPORATION, APPELLANT, DELILA ARLENE LEMLEY, PERSONAL REPRESENTATIVE OF THE ESTATE OF GEORGE E. LEMLEY, DECEASED, APPELLEE.

318 N.W.2d 275

Filed April 16, 1982. No. 43961.

James R. Hancock of Hancock Law Offices, for appellant.

Clark G. Nichols of Winner, Nichols, Meister, Douglas & Kelly, for appellee Delila Lemley.

Heard before BOSLAUGH, MCCOWN, and CLINTON, JJ., and HAMILTON and CASE, D. JJ.

CASE, D.J.

This is an action for declaratory judgment with the following factual situation: One Richard K. Schultz (not a party to this action) was indebted to the defendant First National Bank of Bayard, Nebraska. He executed a financing statement and security agreement on January 5, 1978, which was filed on January 12, 1978.

In that document the following language appears as a description of a portion of the security: "Lot 5 Lake Minatare and cabin at same location to secure note in amount of $30,000.00." The cabin is on leased land and ownership of the real estate is not an issue.

The parties have stipulated that the plaintiffs are the owners of a cabin and certain other items of personal property located on Lot 5, cabin site area at Lake Minatare Reservoir, situated in the south half of Section 31, Township 23 North, Range 53 West of the 6th P.M., Scotts Bluff County, Nebraska.

Richard K. Schultz filed his petition in the bankruptcy court, declaring himself to be a bankrupt, in

July of 1979. He listed in the schedules for creditors holding security the First National Bank of Bayard, Nebraska; the security being described as financing statement and security agreement dated January 5, 1978, filed with the Scotts Bluff County clerk on January 12, 1978, and recorded at Book 572, Page 93, referring to Lot 5, Lake Minatare, and cabin at same location, to secure note in amount of $30,000 dated January 5, 1978.

Shortly after filing, the bankruptcy court disclaimed the cabin property in that proceeding and Richard K. Schultz proceeded to sell the property to Arthur H. and Ethel D. Lindsay, the plaintiffs herein.

In order to secure a balance due Schultz, the plaintiffs gave a security interest which is evidenced by a financing statement and security agreement which was filed December 6, 1978; the financing statement showing the rights of the secured party (Schultz) assigned to George E. Lemley, who is now deceased and who appears in this action by his personal representative as an additional defendant.

The issues in the trial court were (1) whether the description in the bank security agreement did not reasonably identify what is described, (2) whether the security agreement was signed in blank, and (3) whether the description of the collateral lake cabin was authorized to be inserted by the debtor in the security agreement.

The trial court held adverse to the defendant bank on all issues. As to the first issue, Neb. U.C.C. § 9-110 (Reissue 1980) provides: "For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

Neb. U.C.C. § 9-402(8) (Reissue 1980) provides: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

In *Mid-Amer. Dairymen, Inc. v. Newman Grove Coop. Creamery Co., Inc.,* 191 Neb. 74, 214 N.W.2d 18 (1974), we applied this premise, and are of the opinion that the description of the security herein is sufficient to place others on notice that a reasonably prudent person would be aware that the property was subject to a security agreement.

In *North Platte State Bank v. Production Credit Assn.,* 189 Neb. 44, 55-56, 200 N.W.2d 1, 8 (1972), we set out our belief in the law to be as follows: " 'The fundamental purpose of Art. 9 of the code is to make the process of perfecting a security interest easy, simple, and certain. . . . The code very simply and briefly provides for a notice-filing procedure with a minimum of information required to be publicized in a filed financing statement. All that is required is a minimal description, and it may be type or kind. The statement need not necessarily contain detail as to collateral, nor any statement of quantity, size, description or specifications . . . .' "

It is difficult to imagine that any person would be misled by the description used in the financing statement and security agreement. There is only one Lake Minatare in the area of Bayard, and this body of water is of sufficient size to be well known throughout the area.

The evidence here indicates two purchase agreements signed by the plaintiffs, the second being filed with the register of deeds on December 6, 1978; it providing the following description: "Lot 5, in the Cabin Site Area at Minatare Reservior [sic], situated in: The South Half (S½) of Section Thirty-one (31), Township Twenty-Three (23) North, Range Fifty-three (53) West of the 6th P.M., Scotts Bluff County, Nebraska."

One of the plaintiffs, Ethel D. Lindsay, testified that they had never checked the records, and when asked why, she stated they were dealing through a realtor and deemed they were safe in doing so. The

same witness testified that they knew they were not going to get a deed, that the cabin was on leased property, and that when they purchased they knew where the cabin was and that the cabin was personal property.

Mr. James Krantz, president of the defendant bank, testified that, to his knowledge, there are no other leased properties on the lake that have cabins on them.

In *Putnam Ranches, Inc. v. Corkle,* 189 Neb. 533, 535, 203 N.W.2d 502, 503 (1973), we held: "Courts are to construe and apply the Uniform Commercial Code liberally to promote its underlying purposes and policies."

As to whether the instrument was signed in blank by the witness Schultz, there is a conflict of testimony. The witness does not deny his signature, stating several times that he suggested that the bank take the cabin as security and that he had no objection to placing the cabin on the security agreement. The bank officer testified that Mr. Schultz gave the information as he filled it out. We believe this to be of little significance.

It nowhere appears in the evidence that the description of the specific items of machinery or the lot itself could have been procured from anyone other than the witness Schultz. It is also significant that the witness Schultz read the petition in bankruptcy and that the information contained in that petition listed the financing statement and security agreement showing the cabin as a part of the security to the defendant bank.

We are of the opinion that if the agreement was not filled in at that meeting of the witnesses Krantz and Schultz, then Schultz, by his testimony herein concerning his actions at that time, authorized, without question, the bank to fill in the form.

We base this premise in part on our interpretations in *Genoa Nat. Bank v. Sorensen,* 208 Neb. 423,

427, 304 N.W.2d 659, 662 (1981), where we held: " 'Courts are to construe and apply the Uniform Commercial Code liberally to promote its underlying purposes and policies.' "

Nebraska security agreements are by statute filed in the offices of the county clerk. Section 9-402(7) provides in part: "A filed financing statement remains effective with respect to collateral transferred by the debtor . . . ."

It would appear that the reason the plaintiffs purchased the cabin property with a prior lien thereon is in their own failure to check the records or to have their representative do so, and their reliance upon the seller.

We are of the opinion that the District Court erred in its findings and that a more liberal construction of the Uniform Commercial Code would permit findings that the property was reasonably described for the purposes of the code, and that the debtor agreed with the manner in which the security agreement was completed.

We therefore reverse the judgment and remand the cause with directions to the District Court to enter judgment for the defendant First National Bank of Bayard, finding that they have a valid security agreement with a first priority; the security agreement assigned to the personal representative of the decedent George E. Lemley to have a second priority.

REVERSED AND REMANDED WITH DIRECTIONS.