**POLK COUNTY BANK,**
Plaintiff–Appellant,

v.

**Bobby GRAVEN,**
Defendant–Respondent.

No. 14907.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 11, 1988.

Gary W. Lynch, Verna Lee Haun, Douglas, Douglas & Lynch, P.C., Bolivar, for plaintiff-appellant.

Thomas Millington, Springfield, for defendant-respondent.

GREENE, Presiding Judge.

On July 14, 1987, this district filed an opinion affirming the judgment. Thereafter, on August 4, 1987, this district denied appellant's motion for rehearing or to transfer to the Supreme Court. Appellant then filed an application for transfer with the Supreme Court, which was sustained on September 15, 1987. On February 4, 1988, the Supreme Court entered the following order: "Case retransferred to the Missouri Court of Appeals—Southern District." With the addition of this paragraph, our original opinion is readopted. It is set out hereafter.

Plaintiff, Polk County Bank (bank) sued defendant, Bobby Graven, alleging conversion by Graven of cattle in which the bank claimed a security interest. Graven counterclaimed, alleging damages by reason of the bank's seizure and sale of other cattle in which Graven claimed a security interest. The case was court-tried, and judgment was entered for Graven on the bank's claim, and for the bank on Graven's counterclaim. The bank appealed—Graven did not.

Viewed in the light most favorable to uphold the judgment of the trial court, the evidence relevant to this appeal was as follows. In 1980, Ellis Spitz and his wife, Elsie, (Spitz) lived on a 10–acre tract of land near Fair Play, Polk County, Missouri, where they kept a number of small feeder type cattle. They decided to go into the dairy business and, in 1982, purchased a dairy farm in Dallas County but retained their domicile in Polk County. Spitz decided to buy some dairy cattle to partially stock the dairy farm and, on April 5, 1982, borrowed $18,000 for that purpose from the bank. Credit life insurance was obtained on which the premium was $198, so the amount of the note evidencing the debt was $18,198. Spitz testified that the bank "took a mortgage on the small stuff that I had and the cows that I bought." There is no copy of the security agreement verifying this statement in the record. However, a bank ledger card in evidence, dated April 5, 1982, lists security for the loan as 15

heifers, 10 milk cows, age 4–7 years, and 17 cows 2–7 years. On April 6, 1982, the bank filed a financing statement with the Recorder of Deeds of Polk County. It listed Spitz as the debtors, and listed "cattle" as the security. There is nothing in the statement to indicate it would cover any personal property Spitz might acquire after the date of the filing of the statement.

Later, Spitz desired to purchase additional dairy cows to add to their herd and, in May of 1982, entered into an agreement with Bobby Graven to purchase 43 dairy cows from him. The cattle were in Dallas County. Spitz agreed to pay $57,559.91 for the cattle. Graven agreed to finance a part of the purchase price by taking a note in the sum of $39,218.18, which would be secured by a security interest in the cattle. Spitz was to pay the difference between the purchase price and the amount Graven was financing, which amount was $18,-341.73. On May 5, 1982, Spitz executed a note in favor of the bank in the sum of $38,210.64. This note represented the outstanding indebtedness on the April 4th note, plus approximately $20,000 which was deposited in the Spitz account. A new security agreement was executed, which covered the cows previously mortgaged plus the 43 cows Spitz was buying from Graven. There is nothing in the record to indicate this document was ever recorded, or that a new financing statement was filed by the bank. In addition, there is nothing in the record to show Graven received a copy of the new security agreement, or knew that it contained a clause giving the bank a preferred security interest in his cattle.

On May 13, 1982, Spitz, in furtherance of the agreement with Graven, paid Graven $18,341.73, and executed a note payable to him in the sum of $39,218.18, which represented the balance due on the purchase price of the 43 cattle. A security agreement securing the note was executed on that date, listing as collateral "all cattle now owned or are hereafter acquired including but not limited to those hereafter described. 43 Head Cattle—42 Holstein Cows and 1 Jersey Cow ... and all increase." The cattle specifically described

were the Graven cattle. A financing statement evidencing the fact that Graven had a security interest in the cattle was filed with the Recorder of Deeds of Dallas County on May 14, 1982. It listed the collateral as "Dairy Cattle" and was executed by Spitz. Although the financing statement was filed in Dallas County, which was not the residence of the debtor Spitz, a letter in the legal file dated June 19, 1986, from Graven's lawyer to the bank's attorney, commemorated the parties' stipulation that the bank had received from Graven copies of the security agreement and financing statement reflecting Graven's loan and security interest in the cattle he sold to Spitz before the bank had honored the check in the amount of $18,341.83 that Spitz had given Graven as partial payment for the Graven cattle.

Spitz failed to make any specified monthly payments on the Graven note and, on September 2, 1982, Graven replevied the cattle he had sold to Spitz for the reason that Spitz had defaulted on his secured obligation. After Graven had taken possession of the cattle, the bank demanded that Graven relinquish possession, as the bank claimed a prior security interest. When Graven refused, the bank filed suit in Polk County, claiming Graven had unlawfully converted the cattle to his own use.

After trial, judgment was rendered for the bank. The judgment was reversed because of improper venue. *Polk County Bank v. Spitz*, 690 S.W.2d 192 (Mo.App. 1985). The present suit was then instituted in Wright County where Graven lived. After a jury-waived trial, the trial court made written findings of fact and conclusions of law, and entered judgment for Graven against the bank on its conversion action.

In its findings, the trial court concluded that Graven had a prior perfected purchase money security interest in the cattle he had sold to Spitz, and that the bank had notice of such fact before it honored the Spitz check for $18,341.73, which had been drawn on the bank, and paid to Graven. Based upon this reasoning, the trial court

ruled against the bank in its conversion action.

The bank relies on three points of claimed error, all of which are related, and all of which contest the trial court's finding that Graven had a prior perfected security interest. The only possible way the bank could have claimed a prior perfected security interest is through its filing of a financing statement on April 6, 1982, long before the purchase of the Graven cattle was ever contemplated, which statement listed "cattle" as the security. The bank's reliance on the financing statement to buttress its claim of a prior perfected security interest is misplaced.

A financing statement must contain a statement indicating the types, or describing the items, of collateral § 400.9–402(1). Section 400.9–110 provides, for the purposes of Article 9 of the Uniform Commercial Code (U.C.C.), that any description of personal property or real estate is sufficient, whether or not it is specific, if it reasonably identifies what it describes. Courts tend to take a liberal view of this requirement. See White and Summers, Uniform Commercial Code, 2nd ed., pp. 961–964. There is nothing in the U.C.C. that expressly states what language in a financing statement would make it apply to after-acquired property. The mere word "cattle," without more, is probably insufficient to provide notice that such word includes after-acquired cattle. See Annotation, Sufficiency of Description of Collateral in Financing Statement under U.C.C. § 9–100 and 9–402, 100 ALR 3d 10, 82–90.

■ However, we need not expressly decide this question, because the terms of the security agreement underlying the financing statement were not established by the bank. The security agreement is the document which delineates the scope of the debtor/creditor relationship and gives meaning to the abbreviated terms of the financing statement. As is stated in *Drysdale v. Cornerstone Bank*, 562 S.W.2d 182, 185 (Mo.App.1978):

> The purpose of a financing statement is simply to give notice to the world that designated parties have entered into a secured transaction covering described collateral; the details must be learned from parties—and *if* after-acquired property is to be included as collateral, the security agreement is where that matter shall be provided for—the debtor's intent to create a security interest *must be ascertained and adjudged by the language of the security agreement, not the financing statement.* (Emphasis added.)

■ For some reason unknown to us, the bank did not plead and prove that on April 5, 1982, at the time Mr. and Mrs. Spitz borrowed $18,198 from the bank to finance the start of a dairy herd, they executed a security agreement which provided that collateral for the loan included after-acquired property. Since the bank failed to do so, it did not prove a prior security interest in the cattle and, therefore, was not entitled to recover. While we agree with the trial court's conclusion that Graven had a prior perfected security interest in the cattle, of which fact the bank had notice, we do not deem it necessary to comment on the whys and wherefores that were the basis for such conclusion.

The bank did not make a submissible case, as it did not introduce sufficient evidence to justify judgment in its favor. This being so, whatever other reasons the trial court gave as the basis of its decision to deny relief, even though some of its conclusions and declarations on which such decision was based may have been faulty, are irrelevant. *Rietsch v. T.W.H. Co., Inc.*, 702 S.W.2d 108, 117 (Mo.App.1985).

Judgment affirmed.

CROW, C.J., and HOLSTEIN, J., concur.